265 N.J. Super. 383 (1993)
627 A.2d 674
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
ROBERT STANTON, JENISE BONNER, CHRISTINE P. HALLENBECK, BENNIE T. MCGHEE, DWAYNE T. ROGERS AND DERRICK JACKSON, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 18, 1993.
Decided June 23, 1993.
*384 Mark P. Stalford, Assistant Prosecutor, argued the cause for appellant (John Kaye, Monmouth County Prosecutor, attorney; Mr. Stalford, of counsel and on the letter-brief).
Stephen W. Kirsch, Assistant Deputy Public Defender, argued the cause for respondents (Zulima V. Farber, Public Defender, attorney; Mr. Kirsch, of counsel and on the letter-brief).
Before BILDER and BAIME, JJ.
The opinion of the court was delivered by BAIME, J.A.D.
We granted the State's motion for leave to appeal from an order of the Law Division, suppressing handguns and illegal drugs seized by the police from the defendants' motel room without a search warrant. The Law Division held that the police officers' entry into the motel room constituted a violation of defendants' Fourth Amendment rights. We disagree and reverse.
At 12:22 p.m. on March 12, 1992, Officer Robert Maldonado of the Asbury Park Police Department received a telephone call from an anonymous informant, advising him that Christopher Torres was selling narcotics from room 23 of the Horizon Motor Inn. *385 The informant also told the officer that several guns were kept in the motel room. Although Officer Maldonado knew of an outstanding bench warrant for Torres, no immediate action was taken on the information received because of police "manpower problems."
After a change of shifts at approximately 12:00 midnight, Sergeant Edward Salerno was apprised of the informant's information and was told to investigate the tip. Due to the possible existence of weapons in the motel room, Sergeant Salerno directed Detective Michael Ham and Officers Thomas McDonald and Frank Sullivan to accompany him.
Upon arriving at the Horizon Motor Inn, Officer Sullivan stationed himself on the west side of the building while the others proceeded to the designated room. With Officer McDonald placed on the left side of the door and Detective Ham situated on the right side, Sergeant Salerno knocked and identified himself as a police officer. It is undisputed that at this point, Derrick Jackson, one of the occupants, pulled back the drapes to the window and, from the vantage point of the hallway, Sergeant Salerno observed a plastic bag containing a white powdery substance on top of a microwave oven in his direct line of sight. Recognizing the substance as cocaine, the sergeant ordered the other officers to enter the room and seize the drugs. The police found sixty bags containing cocaine, two handguns, a box of ammunition, and a thirteen inch knife.
In its oral opinion suppressing the evidence, the Law Division found that the anonymous tip was insufficient to establish probable cause, that no investigative action had taken place during the intervening twelve hours, and that the police, by knocking on the door of the motel room and announcing their presence, had created the exigency which they asserted as justification for the warrantless entry. The court discounted the importance of the outstanding arrest warrant for Torres, finding that the police officer's objective was not to execute an arrest but rather to investigate for drugs.
*386 We conclude that although the exigent circumstances which justified entry into the motel room were "police-created," they arose as a result of reasonable police investigative conduct. State v. Hutchins, 116 N.J. 457, 460, 561 A.2d 1142 (1989). Clearly, the information received from the informant was insufficient to establish probable cause and enable the police to obtain a warrant. Id. at 474, 561 A.2d 1142; see also State v. Novembrino, 105 N.J. 95, 122-29, 519 A.2d 820 (1987). The unverified facts were plainly inadequate to support issuance of a search warrant. State v. Hutchins, 116 N.J. at 474, 561 A.2d 1142. We discern nothing constitutionally offensive in the decision of the police to proceed to the scene and investigate. Indeed, the officers would have been derelict in their duty had they failed to do so. We also perceive nothing unreasonable in the officers' decision to knock on the motel room door and identify themselves. Whether or not this conduct was intended to detect criminal activity, it was not unreasonable or inconsistent with Fourth Amendment principles. We assume that the police routinely respond to complaints of criminal conduct by proceeding to the scene, announcing their presence and making reasonable inquiries. That is their job. We know of no constitutional prohibition barring such conduct.
We recognize that the police could have taken other investigative action. Perhaps they could have embarked upon a surveillance, see State v. Alvarez, 238 N.J. Super. 560, 570-72, 570 A.2d 459 (App.Div. 1990), or have engaged in a "controlled purchase" of illicit drugs, see State v. Henry, 255 N.J. Super. 593, 598, 604, 605 A.2d 1113 (App.Div. 1992). The point to be stressed, however, is that they were not constitutionally compelled to pursue these options, and the course they chose was not unreasonable. Indeed, it is certainly arguable that a police surveillance or a "controlled purchase" of narcotics poses a greater threat to the right of privacy than the limited action taken by the police here.
Defendants complain that the conduct of the police was intended to generate evidence of criminal activity, and that the observations of drugs cannot be considered because they were not "inadvertent." *387 As we pointed out, however, the police had the right, if not the duty, to proceed to the scene of the complaint and inquire. See Cupp v. Murphy, 412 U.S. 291, 294, 93 S.Ct. 2000, 2003, 36 L.Ed.2d 900, 905 (1973); 3 Wayne R. LaFave, Search & Seizure, § 9.2(h) at 404-19 (2d ed. 1987). No search or seizure occurs if a police officer simply observes or speaks to a person in an area in which the public is invited, whether or not he suspects criminal activity is afoot. United States v. Castellanos, 731 F.2d 979, 982-83 (D.C. Cir.1984). Beyond this, it is highly doubtful that the police here were sufficiently prescient to expect the defendants would so clearly reveal their criminal conduct when they announced their presence. It is to be recalled that, instead of attempting to conceal the drugs, the defendants opened the drapes, thereby offering the police a clear view of the contraband. Although the police took advantage of their good fortune, they were not blessed with clairvoyance and it is doubtful that they could prognosticate the defendants' guileless revelations of criminality when they appeared at the scene and announced their presence. It is no more unfair to use the evidence the defendants unwittingly revealed than it is to turn against them clues which a brighter or more gifted criminal would have concealed.
The essential fact is that the police had the right to be in the hallway when they observed the drugs in plain view. It is true that the police officers' observations were not inadvertent. See Coolidge v. New Hampshire, 403 U.S. 443, 466-73, 91 S.Ct. 2022, 2037-42, 29 L.Ed.2d 564, 583-87, reh'g denied, 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120 (1971). As we noted, however, in State v. Foley, 218 N.J. Super. 210, 216, 527 A.2d 482 (App.Div. 1987) (quoting State v. O'Herron, 153 N.J. Super. 570, 576 n. 2, 380 A.2d 728 (App.Div. 1977), cert. denied, 439 U.S. 1032, 99 S.Ct. 637, 58 L.Ed.2d 695 (1978)), "where the `plain view' is made without an intrusion at all, it is entirely irrelevant whether the police make their observations inadvertently or intentionally." See also 1 Wayne R. LaFave, Search & Seizure, § 2.2(a) at 322-23. The conclusion that police observations made without physical intrusion into a protected area need not meet the Coolidge "inadvertence" *388 requirement is supported by recent decisions of the Supreme Court in California v. Ciraolo, 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210, reh'g denied, 478 U.S. 1014, 106 S.Ct. 3320, 92 L.Ed.2d 728 (1986) and United States v. Dunn, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326, reh'g denied, 481 U.S. 1024, 107 S.Ct. 1913, 95 L.Ed.2d 519 (1987). The Constitution does not require police officers to "shield their eyes" when they suspect that criminal activity is taking place. United States v. Ciraolo, 476 U.S. at 213, 106 S.Ct. at 1812, 90 L.Ed.2d at 216.
Both State v. Hutchins, 116 N.J. at 457, 561 A.2d 1142, and State v. Lewis, 116 N.J. 477, 561 A.2d 1153 (1989), heavily relied upon by the defendants, are inapposite. In Hutchins, our Supreme Court expressly stated that a police-created exigency could justify entry into a home if the "police investigative conduct" intended to generate criminal activity was "reasonable." Id. at 460, 561 A.2d 1142. The matter was remanded to the Law Division to resolve issues pertaining to the "existence of probable cause and exigent circumstances, including whether the exigency, if it existed, was permissibly or impermissibly created by the police officers...." Id. at 476, 561 A.2d 1142. In Lewis, the Court held that the police had unlawfully intruded into the defendant's apartment when they observed criminality in plain view. 116 N.J. at 485, 561 A.2d 1153.
Here, we find as a matter of law, that the police-created exigency was prompted by reasonable investigative law enforcement behavior and that the officers were lawfully in the viewing area.
Reversed.