674 A.2d 996

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. KEITH JOSEY, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted December 13, 1995—Decided April 23, 1996.

18 

Before Judges KING, LANDAU and HUMPHREYS.

*Espey* and *Szabo*, Flemington, attorneys for appellant (*Lowell Espey*, of counsel and on the brief).

*Robert W. Gluck*, Prosecutor, attorney for respondent (*Simon Louis Rosenbach*, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

HUMPHREYS, J.A.D.

The police observed the defendant and a co-defendant selling cocaine on the sidewalk outside of the defendant's apartment. After observing a number of sales, the police attempted to arrest them. The defendant fled into his apartment. The police entered his apartment and arrested him.

The defendant's motion to suppress evidence was denied. He later pled guilty to the following charges: possession of a controlled dangerous substance (cocaine) (third degree) (count one), contrary to *N.J.S.A.* 2C:35–10a(1); possession of a controlled dangerous substance with intent to distribute (cocaine) (third degree) (count two), contrary to *N.J.S.A.* 2C:35–5a(1) and 2C:35–5b(3); possession of a controlled dangerous substance with intent to distribute on or near school property (cocaine) (third degree) (count three), contrary to *N.J.S.A.* 2C:35–5a(1) and 2C:35–7; distribution of a controlled dangerous substance (cocaine) (third degree) (count four), contrary to *N.J.S.A.* 2C:35–5a(1) and 2C:35–5b(3); distribution of a controlled dangerous substance on or near school property (cocaine) (third degree) (count five), contrary to *N.J.S.A.* 2C:35–5a(1) and 2C:35–7; possession of a controlled dangerous substance with intent to distribute (marijuana) (fourth degree), (count six) contrary to *N.J.S.A.* 2C:35–5a(1) and 2C:35–5b(12); possession of a controlled dangerous substance with intent to distribute on or near school property (marijuana) (third degree) (count seven), contrary to *N.J.S.A.* 2C:35–5a(1) and 2C:35–7; obstructing the administration of law or other governmental function

(fourth degree) (count eight), contrary to *N.J.S.A.* 2C:29–1; and resisting arrest (fourth degree) (count nine), contrary to *N.J.S.A.* 2C:29–2.

He was sentenced as follows:

On count 3 to a prison term of 10 years with a 5 year parole bar; on count 5 to a term of 5 years with a 3 year parole bar to run concurrently with count 3; on count 7 to a term of 5 years with a 3 year parole bar to run concurrently with count 3; on count 8 to a term of 18 months with a 9 month parole bar to run consecutively with count 3; and on count 9 to a term of 18 months, with a 9 month parole bar to run concurrently with count 8. Also imposed were various penalties and fees. In addition, his driver's license was suspended for a total of eighteen months, and money and property seized from him at the time of arrest were forfeited.

The defendant appeals pursuant to *R.* 3:5–7(d). He contends that evidence should have been suppressed because the police entered his apartment without a warrant. The Middlesex County Prosecutor argued at the hearing before the motion judge that the entry was justified. In his brief before this court, the prosecutor changes his position. He now concedes that the entry was improper. Nevertheless, he maintains that most of the convictions should be affirmed.

After a thorough examination of the record, we hold that the police entry into the apartment did not violate the defendant's constitutional rights. Hence, the motion to suppress was properly denied. The convictions are affirmed.

I

Two police officers, Det. William Oels and Sgt. Paul Schuster, testified at the suppression hearing. Neither the defendant nor his co-defendant testified. Superior Court Judge Lefelt made the following findings.

On December 11th, 1993 in the morning Detective Oels observed approximately four drug transactions involving Mr. Josey and Mr. Jones [a co-defendant]. He

was concerned about the small bags being sold, since they can, apparently, be easily swallowed.

While Oels observed Josey changing clothes throughout his observation, he did not see the stash and could not determine if it was, in fact, kept in the house, in Josey's apartment or in his house.

After observing a larger plastic bag containing, allegedly, too many packets to be swallowed passed from Mr. Josey to Mr. Jones, Oels radioed for the backup officers to move in.

At this time Oels observed Mr. Josey walking back toward the entrance to his house. Mr. Josey's house entrance was in an alley on the side of his house.

Oels also saw Mr. Jones throw the bags that Josey had given him to the ground as the officers arrived. These bags were picked up by the arresting officers.

As Schuster arrived in the back of the alley, which contained Josey's entranceway, Mr. Josey was not in sight.

Schuster saw Jones being cuffed at this time. He did not see Jones throw the items to the ground.

Schuster pounded on the door and demanded entry. He heard footsteps running up the stairs. He broke down the door, and entered the house. There was a struggle with Josey, as Mr. Josey apparently tried to dump a plastic bag with white powder ... [into] a sink. This bag was, according to Schuster, completely empty at the time they finally arrested Mr. Josey, and the bag was completely filled [with] water.

The three officers handcuffed Josey and were taking him out. In plain view, Sergeant Schuster saw in the bedroom twenty-two packets of cocaine lying on the floor.

A search warrant was obtained, and later there was found some marijuana and over a thousand dollars in cash.

Now, first, since I have found that Jones threw the bags to the ground, this was an event in no violation of his constitutional rights for the police to retrieve these items. Accordingly they will not be suppressed.

Second, while a witness cannot assume hot pursuit, as Mr. Nieves argued in his argument, there is sufficient evidence from which I can infer that Mr. Josey ran from the police and up the stairs causing the exigent circumstances permitting, in my view, Sergeant Schuster's entry into the house.

Officers were converging on Mr. Jones and Mr. Josey. Schuster saw the end of the Jones' arrest, and there was only one door to Josey's apartment, and Josey was not there, and then Schuster heard the footsteps running up the stairs. This leads me to conclude that there was, that this was, in fact, hot pursuit.

Now, there was urgency, hot pursuit, to arrest and prevent destruction of contraband. There's no doubt I found, and I find, that Mr. Josey knew the police were hot on his trail. Schuster heard the running up the stairs and could reasonably believe contraband was to be destroyed.

There was no danger to the officers guarding that sight under the *Lewis* test, that was a factor, there was no danger to the officers if they guarded that site after

Mr. Josey ran in the house, but I believe the contraband, any contraband would … [have] been destroyed had a warrant, had the time it taken to obtain a warrant in this situation.

I believe this is different from *State versus Lewis* relied on by the defense where the police officer had no right to put his foot in the door when he put his foot in the door.

Here Mr. Josey, by his own actions, gave Schuster cause to enter the house, in my view. I do not believe a warrant could have been obtained before Oels called in the arrest, as argued by Mr. Nieves, because no observations were made of the house and the stash.

Since the entry was valid, the seizure of the drugs in plain view and the drugs and cash seized in response to the warrant were also seized lawfully, and therefore shall not be suppressed.

## II

A heavy burden must be overcome by the State to justify a warrantless entry into a home. *State v. Hutchins,* 116 *N.J.* 457, 463, 561 *A.*2d 1142 (1989); *State v. Lewis,* 116 *N.J.* 477, 483, 561 *A.*2d 1153 (1989). The physical entry into a home is the "chief evil against which the wording of the Fourth Amendment is directed...." *United States v. United States District Court for the Eastern District of Michigan,* 407 *U.S.* 297, 313, 92 *S.Ct.* 2125, 2134, 32 *L.Ed.*2d 752, 764 (1972). "Accordingly, it is well established that 'searches and seizures inside a home without a warrant are presumptively unreasonable.'" *Payton v. New York,* 445 *U.S.* 573, 586, 100 *S.Ct.* 1371, 1380, 63 *L.Ed.*2d 639, 651 (1980); *Welsh v. Wisconsin* 466 *U.S.* 740, 749, 104 *S.Ct.* 2091, 2097, 80 *L.Ed.*2d 732, 743 (1984); *State v. Hutchins, supra,* 116 *N.J.* at 463, 561 *A.*2d 1142.

Nevertheless a warrantless entry into a home may be valid if warranted by exigent circumstances, such as hot pursuit of an armed felon. *Warden, Maryland Penitentiary v. Hayden,* 387 *U.S.* 294, 87 *S.Ct.* 1642, 18 *L.Ed.*2d 782 (1967). The potential destruction of evidence is also an exigent circumstance which would support a warrantless entry into a home. *See United States v. Santana,* 427 *U.S.* 38, 96 *S.Ct.* 2406, 49 *L.Ed.*2d 300 (1976); *State v. Hutchins, supra,* 116 *N.J.* at 464, 561 *A.*2d 1142.

Professor LaFave has stated: "Other courts have rather consistently upheld warrantless entries where the pursuit was equally 'hot' and even when it was somewhat less 'hot' than in *Hayden* and *Santana....*" Wayne R. LaFave, *Search and Seizure*, § 6.1(d) at 252 (3d ed. 1996) (footnote omitted). "Thus, totally apart from the question of whether a need to save evidence should justify a warrantless entry and full search for that evidence, ... it makes great sense to recognize that frequently an immediate entry to arrest is necessitated so that the defendant can be disabled from destroying or distributing evidence...." LaFave, *supra*, § 6.1(f) at 274 and § 6.5(b) at 340–360 (footnotes omitted).

The validity of a warrantless entry by the police into a home has been considered in a number of recent New Jersey cases. In *Hutchins, supra,* 116 *N.J.* at 459, 561 *A.2d* 1142, the Court considered the legality of such an entry following an informant's tip of suspected drug activity. The officers went to the defendant's apartment in an attempt to make an undercover drug buy. *Ibid.* The defendant answered the door but didn't respond to the officers' attempted solicitation. *Ibid.* The officers noticed that the defendant's right fist was clenched in a manner suggesting possible concealment of narcotics. *Ibid.* The officers then identified themselves. *Ibid.* According to an officer's testimony, the defendant turned and fled into the house. *Ibid.* The police pursued, apprehended him and recovered 10 glassine envelopes containing heroin from his right hand. *Ibid.*

The defendant testified that he backed into the house but the officers pursued him and, "in effect, 'planted' the heroin on him." *Ibid.* The judge did not resolve the factual dispute. *Ibid.* Instead, he suppressed the evidence on the ground that the officers should have obtained a search warrant. *Ibid.*

The Supreme Court concluded:

Although the exigent circumstance can properly be described as 'police-created,' it may have arisen as a result of reasonable police investigative conduct intended to generate evidence of criminal activity. In that context, the exigency of potential destruction of narcotics, if accompanied by probable cause, could support a warrantless entry into the premises.

[*Id.* at 460, 561 *A.2d* 1142.]

The Supreme Court remanded the matter to the Law Division "to resolve the disputed factual issues and determine whether the police officers had probable cause to arrest defendant and whether their warrantless entry was justified based on the existence of 'exigent circumstances.' " *Ibid.*

In *State v. Lewis, supra,* 116 *N.J.* at 479, 561 *A.*2d 1153, the Supreme Court also considered the legality of a warrantless entry into an apartment pursuant to an informant's tip of suspected drug activity. The officer had knocked on the door of the apartment. A male voice answered, " 'who is it?' " *Id.* at 480, 561 *A.*2d 1153. The officer "mumbled, 'it's Tony.' " *Ibid.* The defendant opened the door, observed the officer in uniform and attempted to close the door. *Ibid.* The officer stuck his foot in the door to keep it open. *Ibid.* With the door "partially opened," the officer observed certain items on the kitchen table including a "clear bottle containing a white powder believed by the officer to be narcotics." *Ibid.* The officer then entered the apartment and arrested the defendant. *Id.* at 481, 561 *A.*2d 1153.

The Supreme Court concluded that the plain view exception to the warrant requirement did not apply because the police officer must be lawfully in the viewing area. *Id.* at 485, 561 *A.*2d 1153. The officer's testimony established that his plain view occurred after he had used his foot to stop the defendant from closing the door. *Ibid.* The Supreme Court also concluded that the informant's tip fell short of a clear showing of probable cause. *Id.* at 486, 561 *A.*2d 1153.

The Court said that "the decisive issue is whether the informant's statement to the police that the apartment's occupants were 'getting ready to leave,' thus threatening removal of any narcotics on the premises, was a sufficient exigent circumstance to justify the officers' warrantless entry into the apartment." *Id.* at

487, 561 *A.*2d 1153. The Court said the issue was "highly fact sensitive"; that "there was no evidence concerning the 'magnitude' of the drug operation" and that "a warrant would have been quickly and readily available." *Ibid.* The officers, the Court said, could have secured the premises and maintained surveillance until a warrant had been obtained. *Id.* at 488, 561 *A.*2d 1153. The Court held that the "exigent circumstances advanced by the State in *this* case did not justify a warrantless entry." *Ibid.* (emphasis in opinion). The Court concluded:

> Thus, the question in each case is whether the circumstances advanced to justify a warrantless entry are sufficiently compelling to overcome the presumptive constitutional requirement that the entry be authorized by a warrant. Police officers should approach the issue pragmatically, and not technically, understanding both the constitution's preference for a warrant and the accommodation permitted by the Fourth Amendment to dispense with the warrant under exceptional circumstances.
>
> [*Id.* at 489, 561 *A.*2d 1153.]

In *State v. Jones,* 143 *N.J.* 4, 7, 667 *A.*2d 1043 (1995), the Court held that it was reasonable under the United States and New Jersey Constitutions for a police officer "following the fleeing subject of an outstanding arrest warrant, to enter a private residence using force [even] if the officer did not know the offense underlying the warrant." The officers had followed the defendant up the stairs to his apartment. *Id.* at 9, 667 *A.*2d 1043. They tried the door to the apartment, found it locked and kicked it down. *Ibid.*

The Court held that the police had a "right to execute an arrest warrant on a defendant at his or her home, and they may enter the home to search for the defendant when there is probable cause to believe that he or she is there." *Id.* at 13, 667 *A.*2d 1043. Once a warrant is issued, or probable cause comes into existence, the officer is under a duty to arrest the suspect. *Id.* at 14, 667 *A.*2d

1043 (citing *Smith v. Gonzales,* 670 *F.*2d 522, 527 (5th Cir.1982), *cert. denied,* 459 *U.S.* 1005, 103 *S.Ct.* 361, 74 *L.Ed.*2d 397 (1982)). The Court said: "Furthermore, these officers knew that both defendant and Collier had been convicted previously of drug offenses. Evidence of drug use or drug distribution is easily destroyed." *Id.* at 19, 667 *A.*2d 1043.

The Court said further: "The main test always remains whether the law enforcement officer has acted in an objectively reasonable manner." *Id.* at 19–20, 667 *A.*2d 1043. The Court concluded: "Under the totality of the circumstances here, we find the police officers acted in an objectively reasonable manner under the Fourth Amendment, and Article I. paragraph 7 of the New Jersey Constitution, when they followed Collier, the fleeing object of the warrant, into the apartment." *Id.* at 20, 667 *A.*2d 1043.

In *State v. Stanton,* 265 *N.J.Super.* 383, 385, 627 *A.*2d 674 (App.Div.1993), a police sergeant, acting on information from an anonymous informant, knocked on the door of a motel room and identified himself as a police officer. One of the occupants in the room pulled back the drapes to the window. The sergeant saw what appeared to be cocaine. *Ibid.* The sergeant then ordered the other officers to enter into the motel room and seize the drugs. *Ibid.* A motion to suppress the evidence was granted by the lower court. We reversed. We held that although the exigent circumstances which justified entry in the motel room were police created "they arose as a result of reasonable police investigative conduct" and were therefore valid. *Id.* at 386, 627 *A.*2d 674.

In *State v. Alvarez,* 238 *N.J.Super.* 560, 570, 570 *A.*2d 459 (App.Div.1990), we upheld a search because the police officers had a reasonable belief that if they did not make a warrantless entry into a hotel room, the contraband would be removed. We said: "[D]rugs and drug paraphernalia, by their very nature, could be

rapidly secreted or destroyed." *Ibid.* *See also United States v. Santana, supra,* 427 *U.S.* 38, 96 *S.Ct.* 2406, 49 *L.Ed.*2d 300 (approving entry when the police had probable cause to arrest the defendant for a drug offense and she fled into a private home in an effort to avoid arrest and there was a "realistic expectation that any delay would result in destruction of evidence"); *State v. Henry,* 133 *N.J.* 104, 111–113, 627 *A.2d* 125 (1993) (warrantless entry into an apartment did not fit into any recognized exception but was justified because, among other reasons, there was a potential for the destruction of evidence and the police action was reasonable under all the circumstances); *State v. Bruzzese,* 94 *N.J.* 210, 219, 463 *A.2d* 320 (1983) (the proper inquiry is "whether the conduct of the law enforcement officer who undertook the search was objectively reasonable, without regard to his or her underlying motives or intent"); *Edwards v. United States,* 379 *A.*2d 976 (D.C.App.1977) (police had probable cause to arrest the defendant and could therefore pursue him into a private apartment); *People v. Land,* 198 *A.D.*2d 438, 604 *N.Y.S.*2d 146 (1993), *appeal denied,* 82 *N.Y.*2d 926, 610 *N.Y.S.*2d 178, 632 *N.E.*2d 488 (1994) (police conduct in following a defendant into his home was proper "since it is well settled that a suspect may not thwart an otherwise proper arrest by retreating into his residence"); *Segura v. United States,* 468 *U.S.* 796, 104 *S.Ct.* 3380, 82 *L.Ed.*2d 599 (1984) (a mere seizure of the premises and contents is permissible on probable cause even absent exigent circumstances; but an entry and search of the premises to facilitate an impoundment requires both probable cause and exigent circumstances). See discussion of *Segura* in LaFave, *supra,* § 6.5(c) at 363; *cf. State v. Bolte,* 115 *N.J.* 579, 560 *A.*2d 644 (1989), *cert. denied,* 493 *U.S.* 936, 110 *S.Ct.* 330, 107 *L.Ed.*2d 320 (1989) (holding invalid the warrantless entry of the police into the home of a person suspected of numerous motor vehicle and disorderly persons offenses when there were no exigent circumstances); *Welsh v. Wisconsin, supra,* 466 *U.S.* 740, 104 *S.Ct.* 2091, 80 *L.Ed.*2d 732 (Court hesitant in finding exigent circumstances justifying warrantless arrest in a

home when the underlying offense is relatively minor); *Payton v. New York, supra,* 445 *U.S.* 573, 100 *S.Ct.* 1371, 63 *L.Ed.*2d 639 (warrantless entry into home to effect an arrest held invalid absent exigent circumstance); *Steagald v. United States,* 451 *U.S.* 204, 101 *S.Ct.* 1642, 68 *L.Ed.*2d 38 (1981) (an arrest warrant did not validate the search of a third party's home absent exigent circumstances or consent).

 In the light of the foregoing authorities, the conduct of the police here was clearly lawful and proper. The police saw the defendant selling illicit drugs, a serious crime. Consequently, the police had ample probable cause to arrest him. *See State v. Seymour,* 289 *N.J.Super.* 80, 87–88, 672 *A.*2d 1273 (1996). Pursuing him into his apartment was plainly justified in order to effect his arrest and prevent the likely destruction of evidence.

 The defendant contends that the police should have obtained a warrant immediately upon their observing the sale of drugs. We disagree. The police reasonably decided to wait until larger drug transactions were involved because of their concern about small bags of cocaine being easily swallowed. Upon observing the sale of a large bag, the police acted. This is certainly reasonable police conduct. We should not second guess the police on matters of proper investigative procedure. The police should not be faulted for attempting to develop a strong case rather than settle for a weak case against a seller of illicit drugs.

 The defendant challenges the motion judge's finding that there was sufficient evidence to infer that the defendant ran from the police. We agree with the judge. The officers were converging on the two defendants. Josey was not there. It appeared likely that he had fled into his apartment. The officer knocked and heard no response except footsteps running up the stairs. The officer reasonably concluded that the defendant had hastily

entered his apartment because he knew that the police were hot on his trail. Upon hearing someone running up the stairs, the officer could reasonably conclude that the defendant intended to destroy contraband before a warrant could be obtained. The officer's belief that contraband would be destroyed was fortified by the officer's knowledge of the defendant's past drug selling. *See State v. Jones, supra*, 143 *N.J.* at 19, 667 *A.*2d 1043 (officers knew that the defendant had been convicted previously of drug offenses; evidence of drug use or drug distribution is easily destroyed).

Under those circumstances the police were not obliged to remain passive and permit evidence to be destroyed. The Fourth Amendment is not violated when the police justifiably pursue a fleeing criminal into his apartment after the criminal has committed a serious crime in their presence. Indeed, the police are under a duty to follow and arrest such a fleeing criminal. *State v. Jones, supra*, 143 *N.J.* at 14, 667 *A.*2d 1043. Moreover, as the trial judge stated, the defendant by his own actions gave the police cause to enter the apartment.

Here the police conducted themselves properly and with due regard for the defendant's constitutional rights. After the police had prevented the defendant from destroying the evidence, they refrained from searching the defendant's apartment until a warrant had been obtained. Holding invalid the reasonable, proper and sensible actions of the police in this case would unduly "frustrate effective law enforcement" and hamper government in its "primary mission" to protect against crime. *State v. Davis*, 50 *N.J.* 16, 22, 231 *A.*2d 793 (1967), *cert. denied*, 389 *U.S.* 1054, 88 *S.Ct.* 805, 19 *L.Ed.*2d 852 (1968). *See also State v. Bisaccia*, 58 *N.J.* 586, 590, 279 *A.*2d 675 (1971); *State v. McKnight*, 52 *N.J.* 35, 52, 243 *A.*2d 240 (1968); *State v. Boykins*, 50 *N.J.* 73, 81, 232 *A.*2d 141 (1967); *State v. Bisaccia*, 45 *N.J.* 504, 509, 213 *A.*2d 185 (1965).

## III

At the suppression hearing, the prosecutor argued that the evidence showed that there were exigent circumstances and that the entry of the apartment by the police was proper. However, on this appeal the prosecutor without explanation reverses his position. He now says that the circumstances were not exigent because there was no evidence that there were drugs in the house or that the defendant would destroy them. In effect, the prosecutor has concluded that the judge could not infer from the evidence that the police had a reasonable basis to believe that the defendant was about to destroy evidence.

The United States Supreme Court has held that a position by the prosecutor favorable to a defendant should be given great weight but is not binding on a court. In *Young v. United States*, 315 *U.S.* 257, 258, 62 *S.Ct.* 510, 511, 86 *L.Ed.* 832, 834–835 (1942) (citation omitted), the Court said:

> The public trust reposed in the law enforcement officers of the Government requires that they be quick to confess error when, in their opinion, a miscarriage of justice may result from their remaining silent. But such a confession does not relieve this Court of the performance of the judicial function. The considered judgment of the law enforcement officers that reversible error has been committed is entitled to great weight, but our judicial obligations compel us to examine independently the errors confessed.... The public interest that a result be reached which promotes a well-ordered society is foremost in every criminal proceeding. That interest is entrusted to our consideration and protection as well as to that of the enforcing officers. Furthermore, our judgments are precedents, and the proper administration of the criminal law cannot be left merely to the stipulation of parties.

See also *Sibron v. New York*, 392 *U.S.* 40, 58, 88 *S.Ct.* 1889, 1900, 20 *L.Ed.*2d 917, 932 (1968) (Supreme Court conducts its own examination of the record in all cases where Federal or State government confesses that a conviction has been erroneously obtained, especially when constitutional issues are involved); *Casey v. United States*, 343 *U.S.* 808, 72 *S.Ct.* 999, 96 *L.Ed.* 1317

(1952) (confession of error by solicitor general accepted because confession would not involve the establishment of any precedent); *see also United States v. Kepner,* 843 *F.*2d 755, 763 n. 6 (3d Cir.1988) (appellate court not bound by government's concession on suppression issue).

Numerous state courts have similarly held that a confession of error by the State must be taken into account by an appellate court but is not a controlling factor which mandates a reversal. *State v. Sanchez,* 174 *Ariz.* 44, 846 *P.*2d 857, 858 (1993); *People v. Alvarado,* 133 *Cal.App.*3d 1003, 184 *Cal.Rptr.* 483, 492 (1982); *People v. Nave,* 689 *P.*2d 645, 647 (Colo.Ct.App.1984); *Gardner v. State,* 591 *N.E.*2d 592, 593 (Ind.Ct.App.1992); *State v. Warren,* 419 *N.W.*2d 795, 799 (Minn.1988); *State v. Kennedy,* 894 *S.W.*2d 723, 727 (Mo.Ct.App.1995); *State v. Hayes,* 135 *Or.App.* 506, 899 *P.*2d 1198, 1200 , *review denied,* 322 *Or.* 168, 903 *P.*2d 886 (1995); *Rosalez v. State,* 875 *S.W.*2d 705, 713 n. 2 (Tex.Ct.App.1993); *State v. Ieremia,* 78 *Wash.App.* 746, 899 *P.*2d 16, 19 n. 1 (1995), *review denied,* 128 *Wash.*2d 1009, 910 *P.*2d 481 (1996); *Turner v. Holland,* 175 *W.Va.* 202, 332 *S.E.*2d 164, 165 (1985); *State v. Mares,* 149 *Wis.*2d 519, 439 *N.W.*2d 146, 150 n. 4, *review denied,* —— *Wis.*2d ——, 443 *N.W.*2d 313 (1989); *cf. State v. Fair Lawn Service Center Inc.,* 20 *N.J.* 468, 470, 120 *A.*2d 233 (1956) (confession of error as to subject matter jurisdiction by Assistant Attorney General not binding on Court); *State v. Bodtmann,* 239 *N.J.Super.* 33, 47, 570 *A.*2d 1003 (App.Div.1990) (court not bound by stipulation between parties that is contrary to controlling law); *Nolan v. Witkowski,* 56 *N.J.Super.* 480, 501, 153 *A.*2d 745 (App. Div.1959), *aff'd,* 32 *N.J.* 426, 161 *A.*2d 102 (1960) (in matters of law, court is never foreclosed by the stipulation of litigants); *see also R.* 3:9–3(e) (a court is not bound by a plea agreement between the State and the defendant if the court finds that the interest of justice would not thereby be served).

The prosecutor has not presented any new facts which would explain his change of position. Judge Lefelt made a factual

finding, well supported by the record, that exigent circumstances were present. The judge found that the police were in hot pursuit of a fleeing known drug trafficker whom the police had just observed selling illegal drugs. The judge said: "There's no doubt I found, and I find, that Mr. Josey knew the police were hot on his trail. Schuster [the police officer] heard the running up the stairs and could reasonably believe contraband was to be destroyed."

In view of these specific findings, the prosecutor's new position is singularly unpersuasive. Notwithstanding the weight to be given a position of the State, we prefer to rely on the considered and sound fact findings of the Superior Court judge who heard and evaluated the testimony of the witnesses. Judge Lefelt was entitled to and did draw reasonable and sound inferences from the evidence. We discern no reason why these fact findings should be rejected. *See Rova Farms Resort v. Investors Ins. Co.*, 65 *N.J.* 474, 483–484, 323 *A.2d* 495 (1974); *State v. Johnson*, 42 *N.J.* 146, 162, 199 *A.2d* 809 (1964).

## IV

Defendant also contends that the State's refusal to waive the extended term is arbitrary and capricious and the case should be remanded for a hearing regarding that issue. We disagree.

In *State v. Lagares*, 127 *N.J.* 20, 33, 601 *A.2d* 698 (1992), the Court held that the defendant may attempt to prove by clear and convincing evidence that a prosecutor's refusal to waive the mandatory extended term was arbitrary and capricious. However, the defendant has a heavy burden in view of the "legislative determination to make an extended sentence for repeat offenders the norm." *Ibid.*

In this case the prosecutor related at sentencing that the defendant had two prior drug distribution convictions which made

the defendant "mandatory extended term eligible"; that the Attorney General guidelines reflect that an extended term sentence for repeat drug offenses should be the norm rather than the exception; and that the defendant pled guilty under a plea agreement which provided for the imposition of an extended term. The prior convictions were not remote. The Probation Department report discloses that the defendant had an extensive juvenile and adult offense history. There were no compelling extraordinary circumstances which would warrant waiver of an extended term. At sentencing, defense counsel was asked if he wished to be heard on the extended term, and he answered "I submit."

Defendant has clearly not met his burden of showing any arbitrary or capricious exercise of prosecutorial discretion. The defendant's extended term sentence is upheld.

Affirmed.