**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3953-18T4

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

RASHEED M. PHILLIPS,

    Defendant-Respondent.

_____

> Argued on September 10, 2019 – Decided November 18, 2019
>
> Before Judges Ostrer and Susswein.
>
> On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 18-01-0074.
>
> John Joseph Santoliquido, Assistant Prosecutor, argued the cause for appellant (Damon G. Tyner, Atlantic County Prosecutor, attorney for appellant; John Joseph Santoliquido, of counsel and on the briefs).
>
> Tamar Yael Lerer, Assistant Deputy Public Defender, argued the cause for respondent (Joseph E. Krakora, Public Defender, attorney for respondent; Tamar Yael Lerer, of counsel and on the briefs).

PER CURIAM

We granted the State's motion for leave to appeal from an order of the Law Division, suppressing heroin seized by police from a hotel room defendant was in at the time of his arrest. The trial court held that the police unlawfully entered the hotel room to arrest defendant for a disorderly persons offense committed in their presence. When defendant opened the door, the officers detected the strong smell of burnt marijuana and saw a marijuana cigar on the bed. The trial court only partly granted defendant's motion to suppress, however. Although the court suppressed the heroin police observed only after they entered the room, it also ruled that the marijuana cigar police observed while they were still in the hallway was admissible under the plain view doctrine. Defendant did not seek leave to appeal the court's decision to admit the marijuana cigar, nor has defendant cross-appealed that ruling in the matter before us.

We believe the trial judge's two rulings—suppressing the heroin and admitting the marijuana cigar—are incongruous. If there was sufficient exigency to justify the police entry to retrieve the marijuana cigar from the bed, as the judge appears to have found, then the officers would have been legitimately present in the hotel room for that purpose when they observed the heroin in an open suitcase next to the bed. We therefore remand the matter for

2                                                                                          A-3953-18T4

the trial court to clarify and amplify its ruling with respect to the exigent circumstances required to enter the room to secure the marijuana cigar. R. 1:7-4(a).

## I.

Defendant was charged by indictment with twelve drug offenses, including two counts of possession of a controlled dangerous substance with intent to distribute and two counts of conspiracy to distribute a controlled dangerous substance. All charges against defendant are based on the drugs seized in the hotel room.

At the suppression hearing, the State presented testimony from two Atlantic City police officers, both of whom the trial court found to be credible. The salient facts derived from the officers' testimony follow. Police received complaints about drug dealing occurring at the Rodeway Inn. The hotel manager told police that there had been heavy foot traffic in and out of Room 107. Police conducted surveillance and observed a male leave that room and walk to the corner of Pacific Avenue, where he met with a female. Police observed what they believed to be a hand-to-hand drug transaction. Police arrested the female and found an illicit drug in her possession. Police then stopped the male and

A-3953-18T4

arrested him for drug distribution.  He stated to police that he was staying in Room 107 at the hotel.

Two police detectives went to Room 107 to continue the investigation. The detectives knocked on the door to the hotel room and announced their identity as police officers.  Defendant opened the door about "80 percent"— enough to allow the officers to see into the room.  The officers immediately detected the "extremely overpowering smell of burnt marijuana."  While still in the hallway outside the room, the officers observed what appeared to be a hand-rolled marijuana cigar on the edge of the bed.

Detective Berardis testified that the room was "extremely small" and that the door almost hit the bed on which the marijuana cigar rested.  Despite the room's small size, the detective could not tell whether any other person might have been in the bathroom.  The detective testified: "I mean management was saying that people were coming inside and out all throughout the night. So yes, there was a possibility there could have been more than one person inside."

Detective Berardis entered the room to place defendant under arrest for marijuana possession and use.  At the moment of the police entry, defendant was still inside the room in the doorway.  Detective Berardis explained that, "I can't

A-3953-18T4

just extend my arms from outside the room and place him into custody. I have to actually step into the room."

As soon as he crossed the threshold into the room, the detective observed a large suitcase in between the bed and the wall adjacent to the door. The suitcase was open. The officer observed a sandwich bag filled with rice, which the officer knew from training and experience drug dealers use to preserve heroin. He also observed multiple bags of suspected heroin and a digital scale. After making the arrest, the detectives secured the marijuana cigar, the bag of rice, the bags of suspected heroin, and the scale. They did not search the room for further evidence.

Although the trial judge found the police witnesses to be credible, he did not agree with Detective Berardis that it was necessary for him to enter the hotel room to effect the arrest. The judge reasoned that the officers could have directed defendant to step out of the room to complete the arrest process.

The judge's oral opinion only briefly touched on the question of exigency and did so in the context of the reasonableness of the police decision to arrest defendant inside the hotel room rather than in the hallway. Specifically, the judge stated,

Cleveland,[1] Alvarez,[2] and even the unpublished case that the State submits, Lawton,[3] all speak to exigencies, destruction of evidence, and officer safety. None of these were present in this particular case, and officer – Detective Berardis could have very well, in my view, when he didn't ask Mr. Phillips to step out or simply cuff him in the threshold when he entered into the room he was not privileged to do so without a warrant absent some concern about destruction of evidence, which I didn't hear, or concern about officer safety, which I didn't hear.

The judge thereupon granted the defense motion "in part," ruling that "[t]he cigar on the bed is in. Everything else [the heroin and paraphernalia] is out."

## II.

We begin our legal analysis by noting the standard of review we apply. We defer to the factual findings made by the trial judge if they are sustained by sufficient credible evidence. State v. Harris, 457 N.J. Super. 34, 43 (App. Div. 2018) (citing State v. Sencion, 454 N.J. Super. 25, 31 (App. Div. 2018)). We owe no such deference to conclusions of law, which we review de novo. Id. at 44 (citing Sencion, 454 N.J. Super. at 31–32).

---

[1] State v. Cleveland, 371 N.J. Super. 286 (App. Div. 2004).

[2] State v. Alvarez, 238 N.J. Super. 560 (App Div. 1990).

[3] State v. Lawton, A-3946-14T2 (App. Div. Jan. 13, 2017). We do not rely on this unpublished opinion in making our decision. See R. 1:36-3.

6

To sharpen the focus of our analysis, it is appropriate to identify what is not at issue in this interlocutory appeal. Defendant does not dispute that it was lawful for police to go to the hotel room without a warrant and knock on the door as part of their ongoing investigation. See generally State v. Hutchins, 116 N.J. 457 (1989) (discussing whether officers' warrantless entry into a home was impermissible but not disputing that knocking on the door during an investigation was allowed). Nor does defendant dispute that, while still outside the threshold of the hotel room, police had probable cause to believe that someone was smoking marijuana inside the room. Defendant does not dispute police also had probable cause to believe that the cigar-shaped object lying on the edge of the bed was contraband.

Defendant acknowledges, in other words, that the "immediately apparent" prong of the plain view doctrine was satisfied with respect to the marijuana cigar. See Texas v. Brown, 460 U.S. 730, 737 (1983) ("Finally, it must be 'immediately apparent' to the police that the items they observe may be evidence of a crime, contraband, or otherwise subject to seizure." (plurality opinion) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 466 (1971))). Nor is it disputed that once Detective Berardis entered the room, he immediately recognized the heroin in the open suitcase. The gist of defendant's argument is

that the detectives were not lawfully present inside the hotel room at the moment that the heroin came into their view.

## III.

The trial correctly determined—and both parties agree—that the critical question in this case is whether police were justified in entering the hotel room under the Fourth Amendment and Article I, Paragraph 7 of the New Jersey Constitution. Given the small size of the room and the close proximity of the open suitcase to the bed and door, it is clear that if the officers were authorized to enter the room for any lawful purpose, the plain view doctrine would apply to the heroin. In that event, the officers would have been "legitimately on the premises" at the same moment that it was "immediately apparent" that the open suitcase contained an illicit controlled dangerous substance.

The question thus turns to whether any recognized warrant exception applies to justify the police entry. The trial judge properly rejected the State's argument that the search-incident-to-arrest exception justified entry. The critical issue is not whether the suitcase fell within the arrestee's wingspan, that is, the area within which an arrested person could reach for a weapon or to conceal or destroy evidence. See Chimel v. California, 395 U.S. 752, 763 (1969) (explaining that when an officer makes an arrest it is reasonable for the officer

8

to search both the arrestee and the area "within his immediate control"). Application of that doctrine in these circumstances would beg the question of whether police were authorized to cross the threshold of the room to make the arrest.

The trial judge also properly rejected the State's argument that entry was authorized by the statute that authorizes police to arrest a person for committing a disorderly persons offense in their presence, N.J.S.A. 40A:14-152. That statute alone cannot authorize police entry into a constitutionally protected premises.[4] Rather, entry must be authorized by a warrant or fall within a recognized exception to the warrant requirement, such as consent (which is not applicable here) or exigent circumstances.

IV.

---

[4] We recognize that in certain circumstances, the privacy expectations in a hotel room may differ from those in a home. Alvarez, 238 N.J. Super. at 571. Recently, the New Jersey Supreme Court made clear in State v. Shaw that, "[h]otel guests have a reasonable expectation of privacy in their rooms akin to that held by property owners and tenants." 237 N.J. 588, 610 (2019). For purposes of this interlocutory appeal, we deem the hotel room to be a constitutionally protected premises that police were not privileged to enter without an arrest or search warrant, defendant's consent, or a recognized exception to the warrant requirement (in this case, exigent circumstances).

A-3953-18T4

By suppressing the heroin but admitting the marijuana cigar, the trial court seems to have made inconsistent rulings with respect to the officers' authority to go into the hotel room based on exigent circumstances. The officers' entry into the hotel room was either lawful or not, whether their purpose for entering was to arrest defendant, to secure the marijuana cigar on the bed, or to accomplish both enforcement objectives.[5]

Under the objective test of reasonableness that courts use to evaluate the constitutionality of police conduct under both the Fourth Amendment and Article I, Paragraph 7 of the State Constitution, it does not matter that the detectives' stated purpose for entering the room was to make the arrest rather than to seize the contraband observed from outside the room. See State v. Malik, 221 N.J. Super. 114, 120 (App. Div. 1987) ("[T]he fact that the arresting officer perhaps did not harbor the state of mind hypothecated by the reasons which provide the legal justification for his conduct does not vitiate the constitutional efficacy of the action taken."). If Detective Berardis had lawful authority to enter the room to secure the marijuana cigar, he would be legitimately present

---

[5] Although Detective Berardis expressly stated at the suppression hearing that he entered the room for the purpose of taking defendant into custody, we think it reasonable to infer from his testimony that he also had the purpose to retrieve the marijuana cigar, which is exactly what he did after handcuffing defendant.

inside the room for purposes of applying the plain view doctrine to the openly exposed contraband he observed while inside the room. That would be true even if Detective Berardis was not authorized to enter based solely on the State's arrest argument.

By denying defendant's motion to suppress the marijuana cigar under the plain view doctrine it appears the trial court held that entry into the room was lawful to effectuate the seizure of the cigar.[6] Courts have long emphasized that "plain view alone is never enough to justify the warrantless seizure of evidence. . . . [N]o amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.'" Coolidge, 403 U.S. at 468. Rather, as Illinois v. Andreas made clear, "[t]he plain view doctrine authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification." 463 U.S. 765, 771 (1983) (citing Brown, 460 U.S. at 737); see also Horton v. California, 496 U.S. 128, 137 (1990) (clarifying that for the plain view doctrine to apply, "not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself"). Therefore,

---

[6] The trial court noted that "[t]he plain view insofar as the marijuana cigar is concerned, is easy. . . ." We interpret this to mean that the judge was satisfied that the seizure of the cigar was lawful.

A-3953-18T4

as the plain view doctrine requires a separate exception to the warrant requirement to justify police entry into the protected area, the judge's ruling on the marijuana cigar suggests the judge also found there to be sufficient exigency to justify crossing the threshold of the room to gain access to the marijuana cigar inside.

The point simply is that the plain view doctrine by itself could not justify the police entry to retrieve the marijuana cigar. Rather, to gain access to the marijuana cigar, the State must prove another warrant exception. In view of this principle of constitutional law, it would seem that the trial court concluded that the exigencies facing the police justified the seizure of the marijuana. However, the trial court did not explicitly indicate its reliance on the exigent-circumstances exception, nor did it make clear findings on the exigencies presented to the police when they viewed the marijuana cigar on defendant's bed. Therefore, our concern at this point focuses on the tacit nature of the trial court's conclusion with respect to the exigency needed to enter the hotel room to retrieve the marijuana.

V.

Unlike in <u>Alvarez</u>, where the trial judge was not available to hear the matter on remand, this case presents no need for us to exercise original

A-3953-18T4

jurisdiction to reconcile the trial judge's rulings to suppress the heroin but not the marijuana cigar. 238 N.J. Super. at 563, 569. The trial judge is better situated than we are to undertake the fact-sensitive inquiry into the exigencies of the situation presented to the police with respect to the seizure of the marijuana cigar. Accordingly, it is proper for the trial court in the first instance to make a detailed finding on whether exigent circumstances made it objectively reasonable for the police to enter the hotel room to retrieve the marijuana cigar.

Although we leave it to the trial court to determine whether it was objectively reasonable for police to retrieve the marijuana cigar without a warrant, to guide the trial court on remand, we next review and summarize several cases that explain the relevant factors to determine whether a particular situation is sufficiently exigent to justify an intrusion upon Fourth Amendment privacy rights. As we noted in Alvarez, while these so-called exigency factors "can be articulated with disarming ease, their application to a concrete factual pattern is not without difficulty." 238 N.J. Super. at 568. The test is "highly fact sensitive." Ibid. (quoting State v. Lewis, 116 N.J. 477, 487 (1989)). We further cautioned that, "[i]n making these judgments, our review" of the police conduct "must be in a commonsense and realistic fashion." Id. at 569.

The New Jersey Supreme Court's decision in State v. Walker is particularly instructive in describing the myriad of exigency factors that may arise. 213 N.J. 281 (2013). In that case, police officers observed the defendant "smoking a marijuana cigarette during a brief interaction with him, while the apartment door was open." Id. at 284. The Court reiterated the well-established principle that a warrantless arrest in an individual's home is presumptively unreasonable and emphasized that the warrant requirement is strictly applied to physical entry into the home because the primary goal of the Fourth Amendment and Article I, Paragraph 7 of the State Constitution is to protect individuals from unreasonable home intrusions. Id. at 289. The Court thus required a showing of exigent circumstances to justify a warrantless home arrest. Id. at 291. The Court further observed that "the application of the doctrine of exigent circumstances demands a fact-sensitive, objective analysis." Id. at 291–92 (quoting State v. DeLuca, 168 N.J. 626, 632 (2001)).

To assist in that analytical process, the Court identified some of the many possible exigency factors that might exist, including

> the degree of urgency and the amount of time necessary to obtain a warrant; the reasonable belief that the evidence was about to be lost, destroyed, or removed from the scene; the severity or seriousness of the offense involved; the possibility that a suspect was

armed and dangerous; and the strength or weakness of the underlying probable cause determination.

[Id. at 292 (quoting DeLuca, 168 N.J. at 632–33).]

The Court added that "[t]he possible destruction of evidence is of great concern when dealing with controlled dangerous substances because 'drugs may be easily destroyed by flushing them down a toilet or rinsing them down a drain.'" Ibid. (quoting Kentucky v. King, 563 U.S. 452, 461 (2011)).

Turning to the particular circumstances in the case before it, the Court deemed it to be a "significant event" that defendant appeared at the door smoking a marijuana cigarette. Id. at 295–96. "Defendant was standing inside his apartment." Ibid. Nonetheless, defendant and the officers were within inches of each other, leading the Court to conclude that, "[c]learly, defendant must have been aware that the officers knew that he was committing an offense. Such observations gave rise to probable cause and authorized the officers to arrest defendant for the disorderly persons offense." Ibid.

This first "significant event" is similar to the facts in the present case given the overpowering smell of burnt marijuana emanating from a small hotel room. It bears noting, however, that in Walker, there was a "second significant event" attributed to the defendant's reaction to the police presence. Id. at 296. Specifically, Walker discarded the marijuana cigarette, retreated into his

15

apartment, and attempted to close the door. Ibid. The defendant's evasive conduct, the Court noted, compelled the police to act to prevent defendant from disposing of the marijuana cigarette or eluding the officers. Ibid.

Considering those circumstances, the Court found the officers' warrantless entry was objectively reasonable, "justified pursuant to the exigent circumstances exception to the warrant requirement." Id. at 298. In reaching this conclusion, the Court emphasized that this exception "did not authorize a broad search of the apartment, but justified a limited entry necessary to arrest defendant for the disorderly persons offense and to retrieve the marijuana cigarette." Ibid. (emphasis added).

We recognize that the defendant's flight into the room made the situation in Walker more urgent than what occurred in the present case. However, other New Jersey precedents have sustained police entry into a home or hotel room in circumstances where occupants did not engage in such provocative actions in response to police appearing at their door.

In State v. Stanton, police responded to a telephone call from an anonymous informant reporting that drug dealing was occurring in a specific room in a motel in Asbury Park. 265 N.J. Super. 383, 384 (App. Div. 1993). Police went to the room, knocked on the door, and identified themselves as

16

police officers. Id. at 385. One of the occupants pulled back the drapes to the window, and from the vantage point of the hallway, an officer observed a plastic bag containing a white powdery substance on top of a microwave oven in his direct line of sight. Ibid. The officer recognized the substance as cocaine and ordered the other officers to enter the room and seize the drugs. Ibid. Once inside, the police found sixty bags containing cocaine, two handguns, a box of ammunition, and a large knife. Ibid.

The trial court suppressed the handgun and illicit drugs, holding that the officers' warrantless entry was unlawful. Ibid. We granted the State's motion for leave to appeal and reversed. Id. at 384. We held that although the exigent circumstances that justified entry into the motel room were "police-created," they arose as a result of reasonable police investigative conduct. Id. at 386. Implicit in that holding is that the circumstances were sufficiently exigent to justify the entry.

We reached a similar result in Alvarez. In that case, police received a report of drug activity occurring on the fourth floor of a hotel in Atlantic City. 238 N.J. Super. at 563. When police went to the hotel to investigate, the desk clerk advised them that there had been numerous telephone calls and "foot traffic" to and from Room 402—the only room occupied on the fourth floor.

Ibid. Four officers went to the room. Ibid. After knocking on the door, one of the officers, in a falsetto voice, identified himself as the maid. Ibid. When the door to the room was opened, police observed narcotics and drug paraphernalia. Ibid. They then entered the room, seized the contraband, and arrested the occupants. Ibid.

The trial judge suppressed the evidence. Id. at 564. We granted the State's motion for leave to appeal and reversed. Id. at 572. We synthesized the exigency factors discussed in earlier precedents and concluded that the State "met its heavy burden of establishing that exigent circumstances existed and that they were not impermissibly created by the police." Id. at 568–69.

## VI.

As noted, we leave it to the trial court to undertake an initial assessment of the exigencies presented to the police with respect to their lawful authority to retrieve the marijuana cigar without first obtaining a search warrant. The court in assessing exigency may consider (1) the limited degree of physical intrusion into the room; (2) the seriousness of the offense for which they had probable cause; (3) the drug distribution transaction involving a room occupant that

18

occurred nearby shortly before the entry;[7] (4) the report of heavy foot traffic into the room; (5) the possibility that someone else might have been in the bathroom; (6) the inherent destructibility of the marijuana cigar; and (7) any other circumstance the court deems relevant to the reasonableness of the police entry to retrieve the marijuana cigar. If the trial judge on remand reaffirms his decision that the entry to seize the marijuana cigar was objectively reasonable under the Fourth Amendment and Article I, Paragraph 7 of the State Constitution, then the detectives would have been legitimately inside the room at the moment they observed the open suitcase next to the bed. In that event, the heroin will be admissible under the plain view doctrine.[8]

Remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[7] Although the observation of the marijuana cigar and smell of burnt marijuana provided only probable cause for a disorderly persons offense, N.J.S.A. 2C:35-10(a)(4), for purposes of exigency analysis, the officers had a basis to believe that Room 107 was associated with drug distribution activity.

[8] Alternatively, if the court makes a finding that there was insufficient exigency, we leave it up to the trial court whether to reverse course and entertain a motion to reconsider the marijuana's admissibility. See R. 4:49-2.

A-3953-18T4