933 A.2d 4 (2007)
396 N.J. Super. 97
STATE of New Jersey, Plaintiff-Appellant,
v.
Altariq LABOO, Mark Mells, and Lamar Moon, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued September 10, 2007.
Decided September 28, 2007.
*5 Hilary L. Brunell, Executive Assistant Prosecutor, argued the cause for appellant (Paula T. Dow, Essex County Prosecutor, attorney; Ms. Brunell, on the brief).
Robert L. Sloan, Assistant Deputy Public Defender, argued the cause for respondent Mark Mells (Yvonne Smith Segars, Public Defender, attorney; Mr. Sloan, of counsel and on the brief).
Alexander R. Shalom, Assistant Deputy Public Defender, argued the cause for respondent Lamar Moon (Yvonne Smith Segars, Public Defender, attorney; Mr. Shalom, of counsel and on the brief).
Marc D'Arienzo, attorney for respondent Altariq Laboo, joins in the briefs of respondents Mells and Moon.
Before Judges LINTNER, PARRILLO, and SABATINO.
*6 The opinion of the court was delivered by
LINTNER, P.J.A.D.
On February 7, 2006, an Essex County Grand Jury charged defendants, Altariq Laboo, Mark Mells, and Lamar Moon, with seventeen counts of conspiracy, armed robbery, and weapons offenses. We granted the State's motion for leave to appeal, R. 2:2-4, following a Law Division judge's decision suppressing evidence seized by the State in a search occurring on April 7, 2005. We now reverse the order suppressing the evidence and remand for further proceedings.
The substantially undisputed facts were developed at a hearing held on January 19, 2007, at which the only witness was Lieutenant David Wood of the Newark Police Department Major Crimes Task Force. The indictment grew out of a string of armed robberies committed by three individuals, occurring on the streets of Newark between 8:00 a.m. and 9:00 a.m. on April 6, 2005. In each incident, two of the perpetrators, brandishing weapons (handguns), approached the victims and robbed them of various items. Among the items taken were two cell phones. The next day, a Superior Court Judge signed a Communications Data Warrant permitting the use of a mobile electronic tracking device.
At approximately 2:00 p.m. on April 7, 2005, Wood, two U.S. Marshals, Captain Melody of the prosecutor's office, and Detective Marques Car of the police department tracked the cell phone to a three-family house at 86 North 11th Street, situated in a high-crime area.[1] They were able to track the cell phone using a U.S. Marshal mobile unit equipped with a tracking/homing device, which can track and locate cell phones by the use of cell phone towers. It took them approximately thirty minutes to find the street location using the tracking device. John Cuff, one of the Marshals, entered the building with Wood and Melody while the other two officers remained outside, where, according to the testimony, many people had gathered, having become aware that a tracking device was being used.
Operating a handheld tracking device, Cuff and the officers were led to the second-floor apartment. Standing in a small hallway on the second floor, Wood knocked on the door and announced he was a police officer. From within the apartment, Wood heard a voice he believed to be a young female yelling and then a man's voice saying, "shut-up, shut-up, 5-0," which he described as a "layman's term for police." He then heard scurrying in the apartment. Knowing they were in a high-crime area, that the robberies involved males who were armed with handguns, and believing a teenage female was in the apartment, the officers "shouldered" the door and entered the apartment with their weapons drawn. After entering the apartment, the officers found items on the living room table that were identified as having been taken during the robberies. The three defendants were in the apartment. As the officers entered, Moon ran into the bedroom where the officers found a silver handgun on the bed. The stolen cell phone was found on one of the two teenage girls who were in the apartment, after Wood dialed the number from his cell phone.
Conceding on cross-examination that they did not have any reason to believe that the suspects were either fleeing or destroying evidence, Wood gave the following *7 explanation for their decision to forcibly enter the apartment out of safety concerns for themselves and the public:
The robberies that morning involved at least four males that were armed. The female voices sounded young, t[w]o teenage females. My biggest fear at that point was, there was no way to retreat, and we had to enter at that point. Now being discovered as the police, for simple safety of the public and the females in the apartment.
He also explained that with the involvement of a gun "there's always a potential for a hostage or a barricade situation . . . [o]r somebody getting hurt. . . ."
Granting defendants' motion, the judge found that the circumstances presented were "not the type of spontaneous and unforeseeable [circumstances] on which the exigency exception to the warrant requirement is predicated." Keying on the short time it took for the officers to locate the three-family house and that they had every reason to expect that the tracking device would lead them to a private home where they would find the cell phone and the culprits, the judge determined that the circumstances were more particularly suited for the issuance of a telephonic search warrant. Noting that the officers were prepared with a handheld device in addition to the device in the Marshal's vehicle that tracked the signal to the building, the judge found that the officers were aware of the potential need to enter a multi-family building. He concluded that "the circumstances attending the intrusion were neither sudden nor unanticipated" and that under the circumstances a telephonic warrant should have been sought as it could have been justified because a cell phone is easily transported and can be turned off. The judge also noted that nothing in the record suggested that the apartment occupants had, in fact, been alerted to the officers' presence before they entered the building.
Both the Fourth Amendment of the United States Constitution and Article I, paragraph 7 of the New Jersey Constitution protect citizens against unreasonable searches and seizures by requiring warrants issued on probable cause "`unless the search falls within one of the recognized exceptions to the warrant requirement.'" State v. Cassidy, 179 N.J. 150, 159-60, 843 A.2d 1132 (2004) (quoting State v. DeLuca, 168 N.J. 626, 631, 775 A.2d 1284 (2001)); see also State v. Dangerfield, 171 N.J. 446, 455, 795 A.2d 250 (2002). Warrantless searches of a person's home are "subjected to particularly careful scrutiny," State v. Bolte, 115 N.J. 579, 583, 560 A.2d 644, cert. denied, 493 U.S. 936, 110 S.Ct. 330, 107 L.Ed.2d 320 (1989), because "`physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" State v. Hutchins, 116 N.J. 457, 463, 561 A.2d 1142 (1989) (quoting United States v. U.S. Dist. Court, 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752, 764 (1972)).
Moreover, any search or arrest "must be reasonable, measured in objective terms by examining the totality of the circumstances." State v. Ravotto, 169 N.J. 227, 235, 777 A.2d 301 (2001). The burden is on the State "to prove the exceptional nature of the circumstances that exempts it from the warrant requirement." Id. at 236, 777 A.2d 301; see also State v. Moore, 181 N.J. 40, 44-45, 853 A.2d 903 (2004).
"The predominant exception" to the warrant requirement is "`exigent circumstances.'" Cassidy, supra, 179 N.J. at 160, 843 A.2d 1132 (quoting Hutchins, supra, 116 N.J. at 463, 561 A.2d 1142). Probable cause, when combined with exigent circumstances, "will excuse a police officer's failure to have secured a written *8 warrant prior to a search for criminal wrongdoing." Ibid. Generally, when there is probable cause to believe a defendant has committed a crime and eluded apprehension by the police by retreating into his home, there is authority for the police, who are in immediate or continuous (i.e., "hot") pursuit, to follow the fleeing felon, and there is a reasonable expectation that a delay in obtaining a warrant would result in the destruction of evidence. See, e.g., United States v. Santana, 427 U.S. 38, 42-43 & n. 3, 96 S.Ct. 2406, 2409-10 & n. 3, 49 L.Ed.2d 300, 305 & n. 3 (1976); Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 298-99, 87 S.Ct. 1642, 1645-46, 18 L.Ed.2d 782, 787 (1967); Bolte, supra, 115 N.J. at 587-92, 560 A.2d 644.
The doctrine does not fit into "neatly defined contours." Cassidy, supra, 179 N.J. at 160, 843 A.2d 1132. Exigent circumstances have also been found to exist where "the events leading up to the search were spontaneous and unforeseeable, and posed a potential threat to officer safety." State v. Cooke, 163 N.J. 657, 668, 751 A.2d 92 (2000) (citing State v. Alston, 88 N.J. 211, 234, 440 A.2d 1311 (1981)). In Warden, supra, 387 U.S. at 298, 87 S.Ct. at 1646, 18 L.Ed.2d at 787, the Court upheld a warrantless search of a private residence where "[t]he police were informed that an armed robbery had taken place, and that the suspect had entered [the residence] less than five minutes before they reached it." In that context, the Court maintained that "[t]he Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others." Id. at 298-99, 87 S.Ct. at 1646, 18 L.Ed.2d at 787.
The existence of probable cause and exigent circumstances trumps the right of privacy and the requirement of a search warrant. Ibid. However, exigent circumstances deliberately created by the police that are not objectively reasonable do not provide a basis for a constitutionally valid warrantless search. Hutchins, supra, 116 N.J. at 468-69, 561 A.2d 1142; United States v. Thompson, 700 F.2d 944, 950 (5th Cir.1983). The following factors should be considered when determining whether to validate a warrantless search under exigent circumstances:
[T]he degree of urgency and the amount of time necessary to obtain a warrant; the reasonable belief that the evidence was about to be lost, destroyed, or removed from the scene; the severity or seriousness of the offense involved; the possibility that a suspect was armed or dangerous; and the strength or weakness of the underlying probable cause determination.
[DeLuca, supra, 168 N.J. at 632-33, 775 A.2d 1284.]
See also Dorman v. United States 435 F.2d 385, 392-93 (C.A.D.C.1970). In Bolte, supra, 115 N.J. at 581-82, 560 A.2d 644, a police officer, without a warrant, pursued the defendant into his house after witnessing the defendant's erratic driving. Commenting on the lack of a serious offense, the Court quoted the following passage from Justice White's dissent in Welsh v. Wisconsin, 466 U.S. 740, 759, 104 S.Ct. 2091, 2102-03, 80 L.Ed.2d 732, 749 (1984):
The gravity of the underlying offense is, I concede, a factor to be considered in determining whether the delay that attends the warrant-issuance process will endanger officers or other persons. The seriousness of the offense with which a suspect may be charged also bears on the likelihood that he will flee and escape apprehension if not arrested immediately. But if, under all the circumstances of a particular case, an officer has probable cause to believe that the delay involved in procuring an arrest *9 warrant will gravely endanger the officer or other persons or will result in the suspect's escape, I perceive no reason to disregard those exigencies on the ground that the offense for which the suspect is sought is a "minor" one.

[Bolte, supra, 115 N.J. at 598, 560 A.2d 644.]
Although the Court in Bolte held that a minor offense does not ordinarily support a warrantless search and the defendant's erratic driving did not provide the officer with sufficient reason to believe that the defendant was operating the vehicle while intoxicated, it concluded the mere lack of a serious offense does not preclude application of exigent circumstances where the record demonstrates that there is "a serious threat to public safety." Ibid.
On appeal, defendants argue that the judge correctly found that the circumstances lacked spontaneity and were neither sudden nor unanticipated. Relying on United States v. Coles, 437 F.3d 361 (3d Cir.2006), defendants assert that "[w]hatever exigencies might have arisen after the police announced their presence at the door cannot excuse their failure to first obtain a search warrant." Id. at 367. We disagree. In Coles, a hotel manager who had observed what he believed to be illegal drugs in the defendants' hotel room allowed police officers to enter the room. The officers established surveillance and observed defendants enter the room. One of the officers knocked on the door. He first identified himself as room service, then hotel maintenance. When the occupants indicated that they did not order such services and refused to open the door, the officer announced he was a police officer, after which running footsteps and a toilet flushing were heard. The officers entered the room and found drugs, cash, and a firearm.
Reversing the trial judge's denial of the defendant's motion to suppress based upon exigent circumstances, the circuit court held that the search violated the Fourth Amendment because the officers impermissibly created the exigency as a pretext to enter the room. Contrary to the State's position that the officer utilized "knock and talk" as a reasonable investigative tactic, the court pointed out that the defendants had not detected the law enforcement surveillance. Id. at 371. The court concluded that there was no evidence presented of "urgency or [the] need . . . to take immediate action" but instead the police "resorted to subterfuge" rather than any intention on their part to investigate the matter further. Id. at 370-71.
In State v. Stanton, 265 N.J.Super. 383, 388, 627 A.2d 674 (App.Div.1993), we determined that a police-created exigency, similar to the present case, was prompted by reasonable investigative tactics. In that case, the police received a tip from an anonymous informant that the defendant was selling narcotics from his motel room where he also kept several guns. Id. at 384-85, 627 A.2d 674. Approximately twelve hours later, four police officers went to the motel and one officer knocked on the defendant's motel room door, identifying himself as a police officer. Id. at 385, 627 A.2d 674. When one of the room's occupants pulled back the drapes to the window, another officer observed a plastic bag containing cocaine in plain view. Ibid. The officers immediately entered the room without a warrant and seized the drugs, as well as two handguns, a box of ammunition, and a knife. Ibid.
Although the exigent circumstances justifying entry into the motel room were "police-created," we concluded that they arose as a result of reasonable police investigative conduct. Id. at 386, 627 A.2d 674.

*10 We discern nothing constitutionally offensive in the decision of the police to proceed to the scene and investigate. Indeed, the officers would have been derelict in their duty had they failed to do so. We also perceive nothing unreasonable in the officers' decision to knock on the motel room door and identify themselves. Whether or not this conduct was intended to detect criminal activity, it was not unreasonable or inconsistent with Fourth Amendment principles. We assume that the police routinely respond to complaints of criminal conduct by proceeding to the scene, announcing their presence and making reasonable inquiries. That is their job. We know of no constitutional prohibition barring such conduct.
[Ibid.]
Noting that the officers "could have taken other investigative action" such as conducting a surveillance, we recognized that "[t]he point to be stressed . . . is that [the officers] were not constitutionally compelled to pursue these options, and the course they chose was not unreasonable." Ibid.
Here, we are equally convinced that, although the exigent circumstances that justified entry into the apartment may have been "police-created," they arose as a result of reasonable police investigative conduct. Hutchins, supra, 116 N.J. at 460, 561 A.2d 1142; Stanton, supra, 265 N.J.Super. at 386, 627 A.2d 674. We also disagree with the judge's analysis that the exigent circumstances lacked spontaneity or urgency. Although it is true that the officers knew that a live cell phone was located in a multi-family building when they first arrived at the address and that there might be suspects at the location, they had no idea which apartment contained the cell phone or the layout of the interior of the building. The officers were neither in control of the location nor the timing of the encounter such that they could ensure continuing an adequate and safe surveillance until they were able to obtain a telephone warrant. Unlike the facts in Coles, the officers did not have advance notice of who was actually in the dwelling or what response might be generated by knocking on the door and announcing their presence. They did not know which apartment contained the cell phone until they found themselves in the confined space of the small second-floor hallway. There is no evidence that they deliberately created a dangerous condition for themselves by entering the building, knocking on the door, and announcing their presence.
In our view, the tracking of a cell phone reported stolen is a reasonable investigative endeavor. The danger occurred suddenly and spontaneously when a male occupant responded to a young lady's yelling by saying "shut up, shut-up 5-0." It did not result from the officers' mere presence in the building. It became dangerous for the first time when the suspects became aware of the police presence. It was only then that urgent circumstances arose, creating the need for the officers to act to avoid further potential danger to themselves or the public.
We perceive from our review of the record that there was a real potential danger for the officers to remain in the hallway until a judge could be contacted telephonically. "[U]nlike an encounter on the street . . . an in-home arrest puts the officer at the disadvantage of being on his adversary's `turf.' An ambush in a confined setting of unknown configuration is more to be feared than it is in open, more familiar surroundings." Maryland v. Buie, 494 U.S. 325, 333, 110 S.Ct. 1093, 1098, 108 L.Ed.2d 276, 285 (1990), superseded by rule, Md. Rules of Order of Dec. 21, 1988, *11 16 Md. Reg. 59 (1989) (amending Md. Rule 4-252), as recognized in Long v. State, 343 Md. 662, 684 A.2d 445 (1996). Likewise, it was impractical for the officers to retreat as such action would create the potential that the suspects, knowing the police were present, might attempt an armed escape, thus endangering other persons either in or outside the building.
We conclude that the particular circumstances here were sufficiently exigent to justify the warrantless entry into the apartment. The officers had probable cause to believe that the delay involved in procuring a warrant might gravely endanger themselves or other persons. The seriousness of the offenses, along with the close proximity in time (approximately thirty hours), and the real possibility that the suspects were armed, combined to establish the necessary exigent circumstances. Our validation of the search is limited to the facts before us and should not be construed as a general justification of warrantless searches of premises located by the use of electronic communication tracking devices.
Defendant Moon also contends that if entry into the apartment was justified by exigent circumstances, the seizure of property, allegedly the subject of the robberies, including several cell phones, was not justified because the items were not in plain view. The issue as raised was not decided by the motion judge. We therefore decline consideration of the issue and leave it to be considered on remand.
We reverse and remand the matter for further proceedings.
NOTES
[1] At oral argument on appeal, the parties agreed that the police arrived at the 86 North 11th Street address at approximately 2:00 p.m., which was thirty hours after the last robbery.