J-S50029-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NATHAN HOWARD | : | |
| | : | |
| Appellant | : | No. 228 WDA 2018 |

Appeal from the PCRA Order January 10, 2018
In the Court of Common Pleas of Erie County
Criminal Division at No(s):  CP-25-CR-0001240-2014

BEFORE:  BOWES, J., OTT, J., and KUNSELMAN, J.

MEMORANDUM BY OTT, J.:                              **FILED OCTOBER 16, 2018**

Nathan Howard appeals from the order entered January 10, 2018, in the Court of Common Pleas of Erie County, that dismissed his first Post-Conviction Relief Act[1] (PCRA) petition without a hearing.  Howard seeks collateral relief from the judgment of sentence of 20 to 60 months' imprisonment, imposed upon his jury conviction of criminal conspiracy – possession with intent to deliver (PWID).[2]  Howard claims: (1) appellate counsel was ineffective in failing to review and present meritorious issues on direct appeal, (2) appellate counsel was ineffective in failing to raise on appeal the issue that the text messages were illegally obtained,  (3) appellate counsel was ineffective in failing to raise on appeal that the search of the duffle bag constituted an

_____

[1] 42 Pa.C.S. §§ 9541-9546.

[2] 18 Pa.C.S. § 903 and 35 P.S. § 780-113(a)(30).

unlawful search and seizure, (4) trial counsel was ineffective for failing to argue Howard's arrest was illegal because police lacked probable cause, (5) trial counsel was ineffective in failing to demonstrate during the suppression hearing the mechanics of Howard's cell phone, (6) trial counsel was ineffective in stipulating to the lab report tendered by the Commonwealth, and (7) trial counsel was ineffective in failing to impugn and impeach the trial testimony of Officer Michael Nolan.[3] Based upon the following, we affirm.

The factual history of this case was fully set forth by this Court in Howard's direct appeal:

> On April 26, 2014, police officers conducted surveillance of the El Patio Motel in Millcreek Township as part of an investigation of alleged drug activity. Officers received information that an individual known as "NASS" (Carnell Tinson) had been selling heroin from motel room 123. While conducting surveillance of the motel, officers observed [Howard] and Tinson enter room 123 at 5:07 p.m. At approximately 7:45 p.m., the officers saw Tinson exit room 123, enter a vehicle, and drive away. Officers followed Tinson but did not apprehend him.
>
> At approximately 8:45 p.m., police officers executed a search of room 123 pursuant to a warrant. Inside the room the officers found [Howard], another individual, an envelope containing a quantity of heroin approximately half the size of a golf ball in plain view on the bed, a digital scale, lottery tickets, and a duffel bag belonging to [Howard]. Inside of the duffel bag was a denim jacket with $1,610 in cash in one of the pockets. Detective Adam Hardner found a cell phone in plain view in a bedroom. [Howard] admitted the cell phone belonged to him and consented to a search of the phone.
>
> James Krayeski, a police informant, testified that he had purchased heroin from Tinson on several prior occasions and had

---

[3] We have reordered Howard's issue for purposes of this discussion.

contacted Tinson by cell phone to arrange the transactions. Krayeski had Tinson's cell number and gave it to the officers. There were two incoming text messages on [Howard's] cell phone originating from Tinson's cell phone number. When Detective Hardner read the text messages out loud to [Howard], [Howard] stated, "that mother fucker set me up." These text messages, sent at 8:31 p.m. and 8:42 p.m., stated, respectively, "flush the work" and "they are out back behind the building." Detective Hardner testified that, in his experience, "work" is a term that refers to drugs. Lieutenant Michael Nolan of the Erie Police Department Drug and Vice Unit testified that drug dealers typically accumulate large amounts of cash and use lottery tickets as packing material for heroin. Detective Hardner testified that, based on his experience, the text message "flush the work" would mean "flush the drugs down the toilet because the police are there."

*Commonwealth v. Howard*, 158 A.3d 185 at *1-*3 (Pa. Super. 2016) (unpublished memorandum) (record citations omitted).

Howard was charged with PWID, conspiracy – PWID, possession of heroin, possession of drug paraphernalia, and person not to possess firearm.[4] Howard filed a motion to suppress and a suppression hearing was held on October 30, 2014. On December 1, 2014, the suppression judge ordered suppression of the firearm seized during the search, but denied suppression of the text messages on Howard's phone and the money found in Howard's ` bag.

As stated above, Howard was found guilty by a jury of conspiracy – PWID.[5] Following sentencing and the denial of his post sentence motion for a

---

[4] 35 P.S. § 780-113(a)(30); 18 Pa.C.S. § 903; 35 P.S. § 780-113(a)(16); 35 P.S. § 780-113(a)(32); and 18 Pa.C.S. § 6105.

[5] The jury deadlocked on the remaining drug charges and the Commonwealth *nolle prossed* those charges. The Commonwealth had withdrawn the firearm charge prior to trial.

new trial, Howard appealed, raising two issues: (1) the jury's verdict was against the weight of the evidence, and (2) the trial court erred in admitting the text messages that were not properly authenticated. On September 22, 2016, this Court affirmed the judgment of sentence. **See id.** Howard did not file a petition for allowance of appeal in the Pennsylvania Supreme Court.

On August 15, 2017, Howard filed a timely PCRA petition. The PCRA court appointed counsel, and counsel filed an amended PCRA petition, titled "Supplement to Motion for Post Conviction Collateral Relief." On November 29, 2017, pursuant to Pa.R.Crim.P. 907, the PCRA court issued notice of its intent to dismiss Howard's petition without a hearing. On January 10, 2018, the PCRA court dismissed Howard's petition, and this appeal followed.[6]

The principles that guide our review are as follows:

"Our standard of review of a [PCRA] court order granting or denying relief under the PCRA calls upon us to determine 'whether the determination of the PCRA court is supported by the evidence of record and is free of legal error.'" **Commonwealth v. Barndt**, 2013 PA Super 206, 74 A.3d 185, 192 (Pa. Super. 2013) (quoting **Commonwealth v. Garcia**, 2011 PA Super 124, 23 A.3d 1059, 1061 (Pa. Super. 2011)).

****

[W]e bear in mind that counsel is presumed to be effective. **Commonwealth v. Simpson**, 631 Pa. 423, 112 A.3d 1194, 1197 (Pa. 2015). To prevail on a claim of ineffective assistance of counsel, a PCRA petitioner must prove each of the following: "(1) the underlying legal claim was of arguable merit; (2) counsel had no reasonable strategic basis for his action or inaction; and (3)

_____

[6] The PCRA court did not order Howard to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

- 4 -

the petitioner was prejudiced—that is, but for counsel's deficient stewardship, there is a reasonable likelihood the outcome of the proceedings would have been different." ***Id.***

***Commonwealth v. Pier***, 182 A.3d 476, 478-79 (Pa. Super. 2018).

The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied "'that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings.'" ***Commonwealth v. Roney***, 622 Pa. 1, 79 A.3d 595, 604 (Pa. 2013) (quoting ***Commonwealth v. Paddy***, 609 Pa. 272, 15 A.3d 431, 442 (Pa. 2011), quoting Pa.R.Crim.P. 909(B)(2)). "To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." ***Roney***, 79 A.3d at 604-05.

***Commonwealth v. Blakeney***, 108 A.3d 739, 749-750 (Pa. 2014).

Howard first argues appellate counsel was ineffective for failing to "raise meritorious issues as opposed to claims that support the government's illegally obtained evidence." Howard's Brief at 10. Specifically, Howard claims appellate counsel was ineffective for failing to pursue suppression issues, and instead raising on appeal the issue of admissibility of the text messages. Howard maintains "[t]he failure of counsel not to litigate the primary issues (the text messages, search and seizure of appellant's duffle bag, illegal seizure of his person, inter ali[a]) loses confidence in the outcome (prejudice) of the appellate proceeding." ***Id.*** at 12.

With respect to claims of ineffective assistance of appellate counsel,

we begin with the presumption that counsel is effective. To prevail on an ineffectiveness claim, Appellant must satisfy, by a

- 5 -

preponderance of the evidence, the performance and prejudice standard set forth in **Strickland v. Washington**, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). This Court has divided the performance component of **Strickland** into two subparts dealing with arguable merit and reasonable strategy. **Commonwealth v. Baumhammers**, 625 Pa. 354, 92 A.3d 708, 719 (Pa. 2014); **Commonwealth v. Pierce**, 515 Pa. 153, 527 A.2d 973, 975-77 (Pa. 1987). With regard to "reasonable basis" in the appellate context, "[i]t is well settled that appellate counsel is entitled, as a matter of strategy, to forego even meritorious issues in favor of issues he believes pose a greater likelihood of success." **Commonwealth v. Jette**, 611 Pa. 166, 23 A.3d 1032, 1043 (Pa. 2012). **See also Commonwealth v. Robinson**, 581 Pa. 154, 864 A.2d 460, 479 n.28 (Pa. 2004), cert denied, 546 U.S. 983, 126 S. Ct. 559, 163 L. Ed. 2d 470 (2005) ("Th[e] process of 'winnowing out weaker arguments on appeal and focusing on'' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.") (quoting **Smith v. Murray**, 477 U.S. 527, 536, 106 S. Ct. 2661, 91 L. Ed. 2d 434 (1986). **Accord Jones v. Barnes**, 463 U.S. 745, 746, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). To establish **Strickland/Pierce** prejudice in the appellate representation context, the petitioner must show that there is a reasonable probability that the outcome of the direct appeal proceeding would have been different but for counsel's deficient performance.

**Blakeney, supra**, 108 A.3d at 749-750.

To the extent Howard argues appellate counsel would not review "meritorious issues" with him, we agree with the PCRA court that Howard failed to substantiate this claim in any manner. **See** PCRA Opinion and Notice of Intent to Dismiss, 11/29/2017, at 1 (unnumbered). To the extent Howard has identified two suppression issues that he claims appellate counsel should

have raised on appeal, we address them below in our discussion of Howard's second and third claims.

In his second claim, Howard contends appellate counsel was ineffective for not challenging the suppression court's rejection of his claim that police illegally searched and seized his cell phone. Specifically, the suppression court determined that Howard gave his consent to Detective Adam Hardner to search the cell phone. The suppression court opined:

> In regard to the cellular telephone, Detective Hardner testified [Howard] gave his consent to search the telephone. Although [Howard] testified to the contrary, this Court finds Hardner's testimony credible and [Howard's] testimony incredible.

Suppression Court Opinion and Order, 12/1/2014, at 9.

Based on our review, we conclude Howard's claim warrants no relief. On appeal from a suppression ruling, this Court will not to usurp the suppression court's function by making its own credibility determinations. *See Commonwealth v. Marshall*, 568 A.2d 590, 595 (Pa. 1989) ("When faced with a conflict of testimony, we defer to the suppression court, which, as fact[-]finder, passes upon credibility of witnesses, and its findings are not disturbed when supported by the record."); *Commonwealth v. Blasioli*, 685 A.2d 151, 157 (Pa. Super. 1996) ("Deference should be given to the decision of the suppression court since that court had a firsthand opportunity to observe the appearance and demeanor of the witnesses, and therefore, to evaluate the credibility of the witnesses.") (quotations and citation omitted). In light of the suppression court's credibility determination, which is supported

- 7 -

by the record, we conclude there is no reasonable probability that, had appellate counsel pursued the issue of the suppression court's ruling regarding search of the cell phone, Howard's appeal would have been successful. As such, Howard's second claim fails.

Within this claim, Howard also argues that, following the denial of his suppression motion as to the cell phone, trial counsel was ineffective in not advancing at trial Howard's position that he did not give Detective Hardner permission to search his phone. Howard's Brief at 15-16. Howard contends trial counsel "prejudice[d Howard] by inferring that [Howard] gave the officer permission to go into his phone." Howard's Brief at 16, *citing* N.T., 1/16/2015, at 80 (cross examination of Detective Adam Hardner). This argument warrants no relief. As will be more fully discussed later in this memorandum, it is clear from the record that trial counsel's defense of Howard at trial was focused on raising reasonable doubt in the juror's minds concerning the element of possession, *i.e.*, Howard's knowledge and control of the contraband. **See** N.T., 1/16/2015, at 133 (trial counsel's closing argument, "Detective Hardner: Can I look at it [referring to Howard's cell phone]? Look at it. Nothing to hide. That's all consciousness of innocence."). As such, trial counsel's manner of cross examining Detective Hardner on the issue of consent was a reasonable trial tactic.

Howard next claims appellate counsel was ineffective for not challenging the suppression court's rejection of his claim that the search of the duffle bag

constituted an unlawful search and seizure. Specifically, the suppression court determined:

> Here, Detective Hardner testified that they searched the duffle bag pursuant to the search warrant. Despite [Howard's] argument to the contrary, the duffle bag was found on the ground (rather [than] on [Howard]) and cannot constitute an extension of his person. Hardner reasonably believed that the bag contained drugs and/or contraband. Accordingly, he was justified in searching the bag pursuant to the lawful search warrant as it constituted part of the general content of the room and was therefore, a repository for drugs. [**Commonwealth v.**] **Reese**[, 549 A.2d 909 (Pa. 1998)]; **see also Commonwealth v. Rega**, 933 A.2d 9[9]7, 1013 (Pa. 2007)(finding that "a lawful search generally extends to the entire area in which the object of the search may be found").

Suppression Court Opinion, 12/1/2014, at 8-9.

Howard claims he immediately gave notice to police conducting the search that he was a visitor and the duffle bag belonged to him. **See** Howard's Brief at 24. Howard contends the search warrant for the motel room did not authorize the search of his duffle bag.

Based on our review, we find no arguable merit in Howard's claim. In **Commonwealth v. Petty**, 157 A.3d 953 (Pa. Super. 2017), *appeal denied*, 169 A.3d 1070 (Pa. 2017), this Court addressed a similar situation. This Court considered whether police were authorized to search, during the execution of a search warrant targeting another individual, the defendant's pants. The pants were laying on the floor next to where the defendant was in bed, and police had no prior contact with him. The **Petty** Court followed the holding in **Commonwealth v. Reese**, 549 A.2d 909 (Pa. 1988), explaining:

In the present case, police possessed a search warrant that was supported by an affidavit of probable cause. The United States Supreme Court has advised that a valid search warrant authorizes the search of any container found on the premises that might contain the object of the search. **United States v. Ross**, 456 U.S. 798, 820, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982).

> [W]here a search warrant adequately describes the place to be searched and the items to be seized the scope of the search "extends to the entire area in which the object of the search may be found and properly includes the opening and inspection of containers and other receptacles where the object may be secreted."

**Waltson**, 724 A.2d at 292 (citing [**Commonwealth v**]**. Reese**, 549 A.2d [909 (Pa. 1988)] at 911].

Because Appellee did not physically possess his pants when police officers found them, police were authorized to search them. **See Commonwealth v. Bleigh**, 402 Pa. Super. 169, 586 A.2d 450 (Pa. Super. 1991) (police had authority to search purse and briefcase found in premises to be searched); **Commonwealth v. Abdul-Salaam**, 544 Pa. 514, 678 A.2d 342, 352 (Pa. 1996) (relying on **Reese** and quoting **Ross**, 456 U.S. at 820-821, Pennsylvania Supreme Court upheld search of briefcase found in closet because "scope of a search 'extends to the entire area in which the object of the search may be found' and properly includes the opening and inspection of containers and other receptacles where the object may be secreted."

The **Reese** Court was clear that there is "a constitutional difference between the search of a visitor's person and the search of a visitor's personal property (property which is not on the person) located on premises where a search warrant is being executed. . . ." **Reese**, 549 A.2d at 910. In upholding the search of the jacket on the kitchen chair, the **Reese** Court explained, "The jacket was not being worn by Reese and therefore, cannot be characterized as an extension of his person so as to propel its search into a search of Reese's person." **Id.** at 911-912. **We reject Appellee's assertion that his jeans were not part of the content of the premises because police knew they belonged to Appellee. Appellee's Brief at 11. Such reasoning negates the underpinning of the *Reese* decision.**

- 10 -

*Commonwealth v. Petty*, 157 A.3d 953, 957 (Pa. Super. 2017) (emphasis added).

It is clear that the suppression court's ruling, which, like **Petty**, was based upon **Reese**, was correct. While Howard, in his brief at page 25, relies on *Commonwealth v. Platou*, 312 A.2d 29 (Pa. 1973), we point out the **Reese** Court overruled its decision in **Platou**. *See Reese, supra*, 549 A.2d at 910 ("Since we now believe there is a constitutional difference between the search of a visitor's person and the search of a visitor's personal property (property which is not on the person) located on premises where a search warrant is being executed, we overrule our decision in **Platou**."). Accordingly, appellate counsel was not ineffective for not challenging the suppression court's ruling with respect to the duffle bag.

In his fourth argument, Howard contends trial counsel was ineffective at pre-trial and trial for failing to raise the issue that Howard was illegally arrested without probable cause.

Probable cause exists where "the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." *Commonwealth. v. Thompson*, 985 A.2d 928, 931 (Pa. 2009). We need not discern whether the officer's belief was more likely correct than incorrect. *Id.* A probability of criminal activity, rather than a

*prima facie* showing thereof, is sufficient. **Id.** To answer the question, we examine the totality of the circumstances. **Id.** Whether police had probable cause to arrest Howard depends on whether the officers had a reasonable belief that Howard had constructive possession of the contraband.

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.
>
> **Commonwealth v. Brown**, 2012 PA Super 119, 48 A.3d 426, 430 (Pa. Super. 2012), *appeal denied*, __ A.3d __, 2013 Pa. LEXIS 609 (Pa. April 3, 2013) (internal quotation marks and citation omitted). Additionally, it is possible for two people to have joint constructive possession of an item of contraband. **Commonwealth v. Sanes**, 2008 PA Super 175, 955 A.2d 369, 373 (Pa.Super. 2008), *appeal denied*, 601 Pa. 696, 972 A.2d 521 (2009).

**Commonwealth v. Hopkins**, 67 A.3d 817, 820-21 (Pa. Super. 2013),

As already set forth herein, the evidence in this case showed that police received information that Carnell Tinson was selling drugs from room 123 of the El Patio Motel. While conducting surveillance, police saw Tinson and Howard enter room 123, and saw Tinson leave the motel room. Thereafter, police executed a search of room 123 pursuant to a warrant, and found Howard, another individual, an envelope containing heroin, a digital scale, lottery tickets, and $1,610 in cash in a duffle bag belonging to Howard. In

addition, Detective Hardner found a cell phone, which Howard admitted the cell phone belonged to him, and Howard consented to a search of his phone. **See Howard, supra**, 158 A.3d 185, at *1-*3.

Based on this evidence, we find no arguable merit in Howard's argument police lacked sufficient probable cause to arrest him. Howard contends "the 9 grams of alleged heroin was [sic] concealed in the coupon value pack envelope, addressed to the current resident, is *prima facie* evidence of who possessed the alleged contraband." Howard's Brief at 30. This argument, however, ignores the concept of constructive possession and the legal tenet that it is possible for two people to have constructive possession of an item of contraband. **See Hopkins, supra**.

Furthermore, Howard's claim, that the text messages obtained from his phone cannot provide probable cause because he was already placed under arrest at the time Detective Hardner saw the text messages, is misplaced. Even without the text messages, based upon the totality of circumstances, *i.e.*, Howard's proximity to the contraband and his possession of a substantial amount of cash, police had probable cause to arrest Howard for constructive possession. **See Commonwealth v. Anderson**, 302 A.2d 504 (Pa. Super. 1973) (police, acting on information from a confidential informant, and executing a search warrant for defendant's friend's apartment, had probable cause to arrest defendant where police uncovered narcotics in close proximity to where defendant had been sleeping). Therefore, we reject Howard's

argument that trial counsel was ineffective for failing to raise the issue that police lacked probable cause to arrest him.

Howard's fifth claim is that trial counsel was ineffective in failing to display during the suppression hearing the mechanics of how Howard's cell phone worked, to call into question the credibility of Detective Hardner's testimony offered at the suppression hearing and to establish a viable predicate to establish an illegal search of the cell phone.[7]

Howard argues Detective Hardner perjured himself on the witness stand by testifying that when he opened Howard's flip phone, he saw the two text messages. Howard states the fact that the flip cell phone was closed means that the applications were closed. Howard contends evidence to demonstrate the operation of the cell phone would have contradicted Detective Hardner's testimony, and "if one element of the testimony is demonstrably false the suppression [c]ourt could reject and would be in a solid position to reject all the testimony of that declarant including claims of the provision of consent for the search." Howard's Brief at 4.

Howard's argument is predicated on the "false in one, false in all" maxim, which states that "if a witness willfully and corruptly swears falsely to any material fact in a case, the [factfinder is] at liberty to disregard the whole

---

[7] This claim was raised by PCRA counsel in Howard's amended PCRA petition. Howard's argument in support of this issue is found in his brief at page 4, under the incongruous heading "Concise Statement of Argument."

of his testimony." ***Commonwealth v. Lilliock***, 740 A.2d 237, 244 (Pa. Super. 1999) (citation omitted).

Here, Detective Hardner testified Howard gave him consent to search his cell phone and the suppression judge found the detective to be credible. The suppression judge also found Howard to be not credible. While Howard relies on the "false in one, false in all" maxim to challenge Detective Hardner's testimony, it is important to point out that "the principle goes no further than to say the [fact-finder] may disregard the testimony, not that [it] must disregard it." ***Lillicock, id.*** (citation omitted). Furthermore, "[t]he maxim applies only when 'a witness willfully and corruptly swears falsely to any material fact.'" ***Id.*** (citation omitted). Here, we find no arguable merit in Howard's claim.

We cannot say that, had Howard presented evidence that contradicted the detective's testimony about how text messages were displayed on Howard's flip phone, the suppression judge would have applied the "false in one, false in all" maxim to the detective's testimony. Indeed, "it is the sole province of the suppression court to weigh the credibility of witnesses, and the suppression court judge is entitled to believe all, part or none of the evidence presented." ***Commonwealth v. Fitzpatrick***, 181 A.3d 368, 373 (Pa. Super. 2018) (quotations and citation omitted), *appeal denied*, 2018 Pa. LEXIS 4200 (Pa. Aug. 15, 2018). We agree with the PCRA court that Howard's "false in one, false in all" credibility assessment argument "is based on

speculation." PCRA Opinion and Notice of Intent to Dismiss, 11/29/2017, at 3 (unnumbered). Accordingly, Howard's fifth ineffectiveness claim fails.

In his sixth issue, Howard claims trial counsel was ineffective for stipulating to the forensic lab report that the powder found by police was a combined nine grams of heroin and fentanyl. Howard argues trial counsel's agreement to the stipulation without Howard's express permission violated his due process rights and right to confront witnesses against him.

Here, as already mentioned, trial counsel's defense of Howard focused on establishing reasonable doubt in the juror's minds as to the element of possession. *See* N.T., 1/16/2015, at 21 (trial counsel's opening statement, "the Commonwealth can't even prove that Mr. Howard knew the drugs were in that room"); *id.* at 136 (trial counsel's closing argument, "this man had nothing to do with those drugs."); *id.* at 137-138 ("[The drugs] were inside a plastic baggie inside an envelope on the bed, on the first bed. Those drugs weren't visible."); *id.* at 138 ("There is not a shred of evidence [Howard] knew those drugs were in the room."). Therefore, the stipulation was a reasonable strategic decision to avoid highlighting the nine grams of heroin laced with fentanyl found in the motel room. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 328 (2009) ("It is unlikely that defense counsel will insist on live testimony whose effect will be merely to highlight rather than cast doubt upon the forensic analysis."). Furthermore, the reasonableness of trial counsel's overall defense that Howard had no knowledge of the heroin is

evidenced by the trial court's observation, in denying the motion for judgment of acquittal, that "it's a very close case." N.T., 1/16/2015, at 119. Accordingly, Howard's claim of trial counsel's ineffectiveness in stipulating to the report fails to warrant relief.

Lastly, Howard contends trial counsel was ineffective for failing to object to materially false and inaccurate statements made by police officers. Specifically, Howard contends Lieutenant Michael Nolan and Detective Hardner created a false narrative by testifying that the time of the execution of the warrant was 8:45 p.m., and not 8:30 p.m. as stated by the prosecutor in his opening. *See* Howard's Brief at 35. Howard argues:

> This [8:45 p.m.] time frame corroborates witnesses' narrative with the Commonwealth's theory of the case. Specifically, that [Howard] was actively participating in the conspiracy to "watch" or "babysit" the drugs possess[ed]/controlled by Mr. Carnal [sic] Tinson/NASS, room 123 of the El Patio Motel (who the search warrant was for) while Mr. Tinson was away from the room. Evidence to sustain their conspiracy theory, was allegedly, text messaged to [Howard] at 8:31 pm, which instructed him to "flush the work" ([t]he [p]urported drugs). At 8:41 pm, Mr. Tinson allegedly text messaged [Howard] again and said "they're out back."
>
> During closing arguments, the Commonwealth, argues to the Jury that when the police officers knocked and announced, they heard no noise in the room. Because, 14 minutes prior (8:31 pm) to execution of the warrant (8:45 pm), [Howard] was allegedly following the instructions of the text message ("flush the work"). [*See*, N.T., 01/15/2015, p.148 n. 7-12.] Using this inference, the Jury was able to draw a conclusion that [Howard], in fact, conspired in the crime of possession of a controlled substance w/intent to deliver. Making the inconsistent time period substantive evidence against [Howard].

Howard's Brief at 35.

We find no merit in Howard's claim, since an objection to the testimony that the warrant was executed at 8:45 p.m., as opposed to 8:30 p.m., would not have served to refute the Commonwealth's conspiracy theory; it does not matter whether Howard actually acted upon the text message to "flush the work." The significance of the text messages — whether sent to Howard's cell phone before or after police entered the motel room pursuant to the warrant — is that Tinson contacted Howard with instructions to "flush the work" and a warning about police that "they're out back", *i.e.*, statements of a co-conspirator in furtherance of a conspiracy to possess heroin with intent to deliver. Accordingly, Howard did not suffer prejudice based upon trial counsel's failure to object to the testimony that the execution of the search warrant occurred at 8:45 p.m. Therefore, we reject this claim of ineffectiveness.

Having considered the issues raised by Howard, and finding these claims present no basis upon which to disturb the decision of the PCRA court to dismiss Howard's petition, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/16/2018

- 18 -