**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1900-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

KEITH HILL,
a/k/a KEITH KAHEEM,
KIHEEM,

     Defendant-Appellant.

_____

Submitted February 1, 2021 – Decided June 14, 2021

Before Judges Mayer and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment Nos. 16-04-0372 and 18-01-0057.

Joseph E. Krakora, Public Defender, attorney for appellant (Frank M. Gennaro, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Steven Cuttonaro, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant appeals from his jury trial convictions for gun and drug offenses. He contends the firearm and drugs were unlawfully seized by police and should have been suppressed, and that the trial court erred by excluding an unsigned police property report defendant sought to introduce at trial. Defendant also appeals from the restitution order entered at sentencing on his guilty plea conviction for an attempted murder he committed during a separate criminal episode.[1] After carefully reviewing the record in light of the applicable legal principles, we reject defendant's contentions and affirm.

I.

We begin by briefly recounting the procedural history and relevant facts. This appeal arises from two temporally distinct criminal episodes. The first incident occurred on December 2, 2015, when defendant was found in possession of a firearm and controlled dangerous substances (CDS) incident to a "buy-bust" police undercover operation.

---

[1] Defendant does not contest his guilty plea conviction for attempted murder. Nor does he contest the prison sentences imposed on his jury trial convictions and his guilty plea conviction.

A-1900-18

In April 2016, a Passaic County grand jury returned indictment number 16-04-0372-I (first indictment), charging defendant with third-degree possession of a controlled dangerous substance, N.J.S.A. 2C:35-10(a)(1); third-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and 2C:35-5(b)(3); third-degree possession of CDS with intent to distribute within 1,000 feet of school property, N.J.S.A. 2C:35-7 and 2C:35-5(a); second-degree possession of CDS with intent to distribute within 500 feet of a public housing facility, park, or building, N.J.S.A. 2C:35-7.1 and 2C:35-5(a); second-degree possession of a weapon while committing certain CDS offenses, N.J.S.A. 2C:35-5 and 2C:39-4.1(a); and second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b)(1).

The second criminal episode occurred on April 13, 2017, while defendant was awaiting disposition of the charges in the first indictment. Defendant approached the victim while she was sitting in her parked vehicle. Acting on orders given by defendant's cousin—who believed her husband was having an affair with the victim—defendant drew a weapon and fired two shots into the car. Both shots missed the intended target.

In January 2018, a Passaic County grand jury returned indictment number 18-01-0057-I (second indictment), charging defendant with first-degree

3                                                                 A-1900-18

attempted murder, N.J.S.A. 2C:5-1(a)(1) and 2C:11-3(a)(1); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); and second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b)(1).

Defendant filed a motion to suppress the firearm seized during the December 2015 incident addressed in the first indictment. In June 2018, Judge Ernest M. Caposela convened an evidentiary hearing after which he denied the suppression motion and rendered an oral opinion. The case was assigned to Judge Barbara J. Stanton for trial. Defendant was tried before a jury on the first indictment over the course of twelve nonconsecutive days in August and September 2018. The jury found defendant guilty on all counts.

In October 2018, defendant entered into a post-conviction agreement with the State and pled guilty to the attempted murder count in the second indictment. In November 2018, defendant appeared for sentencing on his trial verdict convictions under the first indictment and his guilty plea conviction under the second indictment. Judge Stanton sentenced defendant to an aggregate state prison term of twenty-three years with a period of parole ineligibility fixed at fifteen years, three months, and seventeen days. The trial judge ordered

defendant to pay restitution to the attempted-murder victim in the amount of $1,300.

Defendant raises the following contentions for our consideration:

POINT I

NO EXIGENT CIRCUMSTANCES EXISTED WHICH JUSTIFIED SERGEANT JUDEH'S EXPANSION OF THE BUY/BUST OPERATION TO THE SECOND FLOOR OF 239 BROADWAY

POINT II

THE TRIAL COURT IMPROPERLY EXCLUDED THE PRISONER PROPERTY REPORT OFFERED IN EVIDENCE BY DEFENDANT

POINT III

THE TRIAL COURT IMPROPERLY ORDERED RESTITUTION IN THE AMOUNT OF $1,300, DESPITE FINDING THAT DEFENDANT DID NOT HAVE THE ABILITY TO MAKE RESTITUTION

II.

We first address defendant's contention the handgun and CDS relating to the first indictment should have been suppressed. We discern the following facts from the motion hearing. On December 2, 2015, at approximately 8:15 p.m., detectives from the Paterson Police Department conducted a narcotics "buy-bust" operation at a three-story multi-family apartment building police believed

A-1900-18

was frequently used as a drug distribution site. Sergeant Sal Judeh oversaw the operation. The front door to the building opens to the first-floor hallway, which is approximately fifteen feet long and five feet wide. A staircase leading to the upper floors connects the stairwell landings on each floor to the front hallway. The hallway, staircase, and landings are common areas of the apartment building.

Two undercover detectives were assigned to purchase narcotics. After knocking on the front door, they were admitted to the front hallway by Deandre Jacobus.[2] The officers held the front door open, ostensibly so that other officers stationed outside could keep them in view. The undercover officers negotiated with Jacobus to purchase a "bundle" (ten decks) of heroin in exchange for forty-five dollars. Jacobus reached into his pocket to remove the bundle. At this point, one of the detectives noticed three men behind Jacobus in the hallway counting currency and glassine bags of crack cocaine and heroin. The undercover detective gave a prearranged hand signal alerting the other officers, including Sergeant Judeh, to enter the building to arrest the multiple suspects. The situation became chaotic.

---

[2] Jacobus is not a party to this appeal.

A-1900-18

Sergeant Judeh observed three women moving hurriedly toward the staircase. He followed them up the stairway and detained them before they reached the second floor. While on the stairs, he heard a male voice yell down from the second floor, "[w]hat is going on there, Jackie? Is it the police?" Sergeant Judeh walked up to the second-floor landing to investigate the voice. He observed an apartment with its front door "wide open." While still on the landing, he observed defendant sitting in a chair at a table with his back facing the open doorway. The table was approximately five feet from the open door. Sergeant Judeh immediately saw a handgun on the table within defendant's immediate reach. He also observed drugs and various drug paraphernalia. Sergeant Judeh entered the apartment through the open door, arrested defendant, and seized the gun and contraband on the table.

At the suppression motion the State presented testimony from Sergeant Judeh and Detective Kevin Kunzig, who was involved in the undercover investigation. Judge Caposela found both were credible. The judge denied the motion, finding in pertinent part:

> [t]here was probable cause to – for the initial buy/bust-type operation that was put in place. The – gun was in plain view. The door was open. There were exigent circumstances because of that. The officer's safety was placed in – in issue with a gun on the table. They had, in this [c]ourt's view, the right to go in there and arrest

7

the defendant and seize the gun and all the drug paraphernalia and drugs.

We agree with the judge that every step taken by police in the swiftly unfolding sequence of events was objectively reasonable and lawful.

We begin our analysis by acknowledging general principles governing this appeal. When reviewing a motion to suppress evidence, we "must uphold the factual findings underlying the trial court's decision, so long as those findings are 'supported by sufficient credible evidence in the record.'" State v. Evans, 235 N.J. 125, 133 (2018) (quoting State v. Elders, 192 N.J. 224, 243 (2007)). We defer to the trial judge's factual findings, as the trial judge has a better opportunity to get a "feel" of the case. Elders, 192 N.J. at 244. A trial judge's credibility determinations therefore should be upheld if they are supported by sufficient, credible evidence. State v. S.S., 229 N.J. 360, 374 (2017).

In contrast, because issues of law "do not implicate the fact-finding expertise of the trial courts, appellate courts construe the Constitution, statutes, and common law de novo—with fresh eyes—owing no deference to the interpretive conclusions of trial courts, unless persuaded by their reasoning." S.S., 229 N.J. at 380 (quoting State v. Morrison, 227 N.J. 295, 308 (2016)) (internal quotation marks omitted).

A-1900-18

Defendant does not dispute the undercover officers were permitted to gain admittance to the apartment building posing as drug buyers. Nor does defendant dispute the officers stationed outside were authorized to enter the first-floor common hallway to assist the undercover officers in making arrests after the undercover officers signaled the CDS transaction in the hallway was consummated. The gravamen of defendant's argument is that Sergeant Judeh had no lawful authority to climb the stairs to the second floor and no lawful authority to enter the private apartment, arrest him, and seize evidence without first obtaining a warrant.[3]

As a general rule, warrantless arrests, searches, and seizures are prohibited under the United States and New Jersey Constitutions unless they fall under a recognized exception to the warrant requirement. One such exception authorizes a police officer to seize evidence or contraband that is in plain view. State v. Gonzales, 227 N.J. 77, 90 (2016). To fall under the plain view exception, the officer must be lawfully present in the viewing area when he or she observes the evidence, and the incriminating nature of the evidence to be seized must be

---

[3] We note that at trial, defendant testified that he did not reside in the apartment in which he was arrested, or in the apartment building, and that he was only there to purchase and use CDS. For purposes of the search-and-seizure question raised on appeal, we treat the apartment in which defendant was arrested as a private premise and not a common area of the apartment building.

A-1900-18

immediately apparent to the officer. Id. at 101 ("Under the plain-view doctrine, the constitutional limiting principle is that the officer must lawfully be in the area where he observed and seized the incriminating item or contraband, and it must be immediately apparent that the seized item is evidence of a crime.").

The latter element of the plain view exception is not disputed in this case. Rather, the critical fact-sensitive issues raised on appeal are (1) whether Sergeant Judeh was lawfully on the second-floor landing at the moment he observed the gun and drug paraphernalia through the open doorway leading into the private apartment, and (2) whether he was authorized to enter the apartment for the limited purpose of arresting defendant and securing the gun and paraphernalia on the table near the doorway at which defendant was seated.

A.

We first address whether the sergeant was lawfully present on the second-floor landing. In Maryland v. Buie, the United States Supreme Court held that when police are lawfully in a private premise to make an arrest, they may conduct a limited sweep search to determine if other persons are present who might pose a danger to the officers. 494 U.S. 325 (1990). In State v. Davila, the New Jersey Supreme Court embraced the "protective sweep search" doctrine established in Buie, recognizing it enables officers "to take reasonable steps to

10

protect themselves from harm while performing their lawful duties . . . ."  203 N.J. 97, 102 (2010); see also State v. Cope, 224 N.J. 530, 546–47 (2016) ("It is recognized that police officers who make an arrest in a home face a great 'risk of danger' because they are 'at the disadvantage of being on [their] adversary's 'turf.'"") (quoting Buie, 494 U.S. at 333) (second alteration in original).  When police make an arrest in a private residence, they "have an interest in ensuring that the suspect 'is not harboring other persons who are dangerous and who could unexpectedly launch an attack.'"  Id. at 547 (quoting Buie, 494 U.S. at 333).  As our Supreme Court further noted in Cope, "an arrest in a home may trigger a potentially chaotic, volatile, and dangerous scene involving the suspect's immediate relatives or friends."  Ibid.  The circumstances of the arrests made pursuant to the buy-bust operation in this instance resulted in just such chaos, volatility, and danger to the officers in the apartment building.

The Supreme Court in Cope concisely summarized the three elements of a lawful protective sweep search:

> In summary, a protective sweep incident to an in-home arrest is permissible under the following circumstances. First, the police may sweep the spaces immediately adjoining the place of arrest from which an attack might be launched even in the absence of probable cause or reasonable suspicion.  Any wider sweep must be justified by specific facts that would cause a reasonable officer to believe there is an individual within the

11

premises who poses a danger to the arresting officers. Second, the sweep must be narrowly confined to a cursory visual inspection of those places in which a person might be hiding. Although the sweep is not a search for weapons or contraband, such items may be seized if observed in plain view during the sweep. Last, the sweep should last no longer than is necessary to dispel the reasonable suspicion of danger or to complete the arrest and depart the premises.

[Id. at 548 (internal citations and quotations omitted).]

We next apply those elements to the facts of this case. As we have noted, the second-floor landing was connected by the staircase to the first-floor hallway, which is where the buy-bust arrests were made. Furthermore, the second-floor landing is an area from which an attack might have been launched upon the arresting officers below, whose attention was directed at apprehending and securing the suspects in the first-floor hallway. We thus deem the staircase and the second-floor landing to be "immediately adjoining" areas with the meaning of the first element of the Buie sweep search doctrine.

Even were we to assume for the sake of argument that the second-floor landing was not immediately adjacent to the first-floor hallway, we would still conclude that Sergeant Judeh had ample basis to widen the protective sweep to the second-floor landing. When Sergeant Judeh heard a male's voice shouting from the second floor asking if police were present in the building, he was

12

conscious of specific facts that would cause a reasonable officer to believe that an individual from the second floor who had become aware of the police operation posed danger to the officers on the first floor. Given the apartment building's known reputation for drug trafficking activity, it was reasonable for the sergeant to believe the unknown individual shouting might have initiated some form of warning response to the police entry and that he posed a threat to the officers performing their duties in the first-floor hallway.

As to the second element of the <u>Buie</u> sweep search doctrine, the sergeant's inspection was narrowly confined to a cursory visual inspection of those places in which the male who had called down to the women on the stairs might be hiding. Sergeant Judeh was still in a common area on the second-floor landing when he observed defendant through the open doorway to the apartment. We therefore need not address whether the sergeant would have been permitted under the <u>Buie</u> doctrine to open a closed apartment door to look for the person who had called down to the women on the stairway.

With respect to the third element of the <u>Buie</u> test, the sweep inspection was of short duration, taking no longer than was necessary for Sergeant Judeh to climb the stairs to the second floor in response to the shouting he heard. On these facts, we hold all three prerequisites for a <u>Buie</u> sweep search were

13

established and that Sergeant Judeh thus was lawfully present on the second-floor landing when he observed and immediately recognized the gun and drug paraphernalia in plain view.

B.

We next address whether the sergeant was authorized to enter the apartment through the open door to effect the arrest and seize the gun and contraband that were only a few feet from the doorway. As we have already noted, our Supreme Court has expressly recognized that although a <u>Buie</u> sweep search is a cursory inspection for persons rather than for guns or contraband, such items may be seized if observed in plain view during the sweep. <u>Cope</u>, 224 N.J. at 548; <u>Davila</u>, 203 N.J. at 115.

We note that Sergeant Judeh did not cross the threshold of the apartment until after he saw and immediately recognized the gun and paraphernalia in plain view on the table. It is long established, however, that "plain view alone is never enough to justify the warrantless seizure of evidence of evidence . . . no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.'" <u>Coolidge v. New Hampshire</u>, 403 U.S. 443, 468 (1971). Rather, as <u>Illinois v. Andreas</u> made clear, the plain view doctrine "authorizes seizure of illegal or evidentiary items visible to a police officer" only if the

officer's "access to the object" itself has a prior Fourth Amendment justification. 463 U.S. 765, 771 (1983); see also Horton v. California, 496 U.S. 128 (1990) (noting that for the plain view doctrine to apply, "not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself"). Accord Gonzales, 227 N.J. at 104 ("Plain view, in most instances, will not be the sole justification for a seizure of evidence because police must always have a lawful reason to be in the area where the evidence is found. Thus, when necessary, the police will also be required to comply with the warrant requirement or one of the well-delineated exceptions to that requirement.").

In this instance, we agree with Judge Caposela that exigent circumstances authorized the warrantless entry to the apartment. It was objectively reasonable for Sergeant Judeh to enter the room without delay to secure the contraband and especially the gun on the table. Indeed, we believe the sergeant would have been derelict in his duties—chiefly in protecting fellow officers from possible attack under the Buie doctrine—had he not done so.

In State v. Walker, our Supreme Court provided guidance on when exigency justifies police entry into a private space to make an arrest and seize contraband. 213 N.J. 281 (2013). In that case, police officers observed the

15

defendant smoking a marijuana cigarette during a brief interaction with him while his apartment door was open.  Id. at 284.  The Court reiterated the well-established principle that a warrantless arrest in an individual's home is presumptively unreasonable and emphasized that "[t]he warrant requirement is strictly applied to physical entry into the home because the primary goal of the Fourth Amendment and Article I, Paragraph 7 of the state constitution is to protect individuals from unreasonable home intrusions."  Id. at 289.  The Court further observed that the application of the doctrine of exigent circumstances demands a fact-sensitive, objective analysis.  Id. at 291–92.

To assist in that analytical process, the Walker Court identified some of the many possible factors that determine whether exigency exists, which include

> the degree of urgency and the amount of time necessary to obtain a warrant; the reasonable belief that the evidence was about to be lost, destroyed, or removed from the scene; the severity of the offense involved; the possibility that a suspect was armed or dangerous; and the strength or weakness of the underlying probable cause determination.
>
> [Id. at 292 (quoting State v. DeLuca, 168 N.J. 626, 632–33 (2001)).]

The Court added that the possible destruction of evidence is of particular concern when dealing with CDS, as "drugs may be easily destroyed by flushing

them down a toilet or rinsing them down a drain." Ibid. (quoting Kentucky v. King, 563 U.S. 452, 461 (2011)).

Our decision in State v. Stanton also is instructive. 265 N.J. Super. 383 (App. Div. 1993). In that case, police responded to a telephone call from an anonymous informant reporting that drug dealing was occurring in a specific room in a motel in Asbury Park. Id. at 384. Police went to the room, knocked on the door, and identified themselves as police officers. Id. at 385. One of the occupants pulled the window drapes back, and an officer from the vantage point of the hallway observed a plastic bag containing a white powdery substance on top of a microwave oven in his direct line of sight. Ibid. Recognizing the substance as cocaine, the officer ordered the other officers to enter the room to seize the drugs. Ibid. The police found sixty bags of cocaine, a large knife, two handguns, and a box of ammunition. Ibid. We held that although the exigent circumstances that justified entry were "police-created," "they arose as a result of reasonable police investigative conduct." Id. at 386.

We reached a similar result in State v. Alvarez, 238 N.J. Super. 560 (1990). In that case, police received a report of drug activity occurring on the fourth floor of a hotel in Atlantic City. Id. at 563. When police went to the hotel to investigate, the desk clerk advised there had been numerous telephone

calls and foot traffic to and from Room 402—the only room occupied on the fourth floor. Ibid. Four officers went to the room. Upon knocking, one of the officers identified himself as the maid in a falsetto voice. Ibid. When the door was opened, police observed narcotics and drug paraphernalia in plain view. They then entered the room, seized the contraband, and arrested the occupants. Ibid.

The trial judge suppressed the evidence. Id. at 564. We granted the State's motion for leave to appeal and reversed. We synthesized the exigency factors discussed in earlier precedent and concluded that the State "met its heavy burden of establishing that exigent circumstances existed and that they were not impermissibly created by the police." Id. at 569.

In the present case, the exigency is self-evident, and in important aspects is greater than the exigencies in Walker, Stanton, and Alvarez. Sergeant Judeh was confronted not only with the chaos and volatility from the buy-bust arrests and the presence of readily-destructible drugs, but also the immediate danger posed by the handgun lying alongside the CDS on the table at which defendant was seated. These exigencies amply justified Sergeant Judeh's split-second decision to enter the room to secure both defendant and the firearm within his immediate reach. There was no less intrusive means available to Sergeant Judeh

18

to secure the scene and protect himself and the officers on the first floor other than for him to enter the room immediately to separate defendant from the gun. It would be objectively unreasonable—and would defy common sense—to expect him to delay entering the apartment until he could obtain a warrant. Accordingly, defendant's motion to suppress was properly denied.

III.

We next address defendant's contention that Judge Stanton erred in excluding a document defendant claims would have supported his trial testimony that he did not reside in the apartment building. Defendant's trial counsel proffered a report concerning personal property that police had taken from defendant upon his arrest. The property report was not signed, nor did it identify the officer who prepared it. The document purported to memorialize defendant's home address. Defendant sought to introduce it to prove that he did not live in the apartment building in which he was arrested. Defendant contends the judge erred in sustaining the State's objection and that the writing should have been admitted as a business record under N.J.R.E. 803(c)(6). We disagree.

The scope of our review is narrow and "a trial court's evidentiary rulings are entitled to deference absent a showing of abuse of discretion . . ." State v.

A-1900-18

Nantambu, 221 N.J. 390, 402 (2015) (quoting State v. Harris, 209 N.J. 431, 439 (2012)).

Our Evidence Rules recognize a business records hearsay exception for:

> [a] statement contained in a writing or other record of acts, events, conditions, and . . . opinions or diagnoses, made at or near the time of observation by a person with actual knowledge or from information supplied by such a person, if the writing or other record was made in the regular course of business and it was the regular practice of that business to make such writing or other record. This exception does not apply if the sources of information or the method, purpose or circumstances of preparation indicate that it is not trustworthy.
>
> [N.J.R.E. 803(c)(6)].

Records kept as required in the regular course of business "'normally possess a circumstantial probability of trustworthiness . . . .'" State v. Kuropchak, 221 N.J. 368, 388 (2015). Police reports, moreover, are generally admissible as records of regularly conducted activity. Manata v. Pereira, 436 N.J. Super. 330, 345 (App. Div. 2014). However, the rule expressly provides that the hearsay exception is not applicable when the source of the information or means of preparation indicates it is not trustworthy. N.J.R.E. 803(c)(6).

Furthermore, even if a writing satisfies the business records criteria, it must be properly authenticated before admission. N.J.R.E. 901; State v. Marroccelli, 448 N.J. Super. 349, 364 (App. Div. 2017) ("Of course, a writing

20

must be properly authenticated before it is admitted into evidence."). The party seeking to introduce the writing has the burden of presenting an adequate foundation. Such authentication "'does not require certain or conclusive proof[,]'—only a 'prima facie showing of authenticity' is required." State v. Tormasi, 443 N.J. Super. 146, 155 (App. Div. 2015) (quoting State v. Mays, 321 N.J. Super. 619, 628 (App. Div. 1999)).

In this instance, the State objected when defendant sought to admit the property report because it was not signed by any law enforcement officer and did not indicate who had prepared it. Judge Stanton commented that such reports require an officer's signature upon the receipt and return of the prisoner's property. No explanation was provided for why the report was not signed. Nor did defendant present additional information to support a prima facie showing of authenticity and trustworthiness. In these circumstances, Judge Stanton acted within her discretion in ruling that defendant failed to satisfy his burden of presenting an adequate foundation for the report's admission into evidence.

We add defendant's argument that the unsigned report is trustworthy because the State provided it during discovery blurs the distinction between the State's discovery obligations and the evidence rules regarding authenticity and admissibility. The fact the State provided the document in discovery does not

21

mean the State waived its right to object to its admission or that the document is automatically admissible at trial.

But even were we to assume for the sake of argument the unsigned property report should have been admitted as corroborative evidence that defendant did not reside in the apartment building, defendant has failed to show that any such error warrants reversal, especially considering the weight of the State's evidence that defendant possessed the gun, drugs, and paraphernalia. See R. 2:10-1 (noting in relevant part that, "[a]ny error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result"). To the extent defendant's place of residence was relevant to his defense strategy, nothing precluded him from introducing other documentary or testimonial evidence to establish his home address elsewhere.

IV.

Finally, we address defendant's contention Judge Stanton erred in ordering defendant to pay restitution to the victim of the attempted murder. N.J.S.A. 2C:44-2(b) provides, "[t]he court shall sentence a defendant to pay restitution in addition to a sentence of imprisonment or probation that may be imposed" when "(1) [t]he victim, or in the case of a homicide, the nearest relative of the victim,

22

suffered a loss; and (2) [t]he defendant is able to pay or, given a fair opportunity, will be able to pay restitution."  In considering the payment amount and method, "the court shall take into account the financial resources of the defendant and the nature of the burden that its payment will impose."  N.J.S.A. 2C:44-2(c)(1). Further, the court looks to the defendant's likely future earnings.  N.J.S.A. 2C:44-2(c)(2).  Restitution shall be set "so as to provide the victim with the fullest compensation for loss that is consistent with the defendant's ability to pay."  Ibid.

Our Supreme Court has explained that sentencing courts are afforded "considerable discretion" when evaluating a defendant's ability to pay.  State v. Newman, 132 N.J. 159, 169 (1993).  The Court recognized "[t]he evaluation is necessarily imprecise because it contemplates an examination of the future ability to pay if the defendant currently does not have financial resources."  Ibid. Importantly, restitution "need not hinge exclusively on ability to pay, if the amount of restitution ordered is otherwise appropriate."  State in re R.V., 280 N.J. Super. 118, 121 (App. Div. 1995).

In this instance, Judge Stanton ordered restitution in the amount of $1,300 reflecting the damage defendant caused to the victim's vehicle when he fired two shots at her.  Defendant contests the restitution order on two grounds.  First, he

23

claims the judge did not have documentation supporting the specific amount. The transcript of the proceeding, however, reveals that in response to Judge Stanton's question, the prosecutor stated that the victim had supporting documents. The judge reserved on deciding the amount of restitution until those documents were received. We are satisfied the payment amount that was imposed reflects that information.

Defendant further contends it was unreasonable to impose a $1,300 restitution payment in light of his lengthy prison sentence and the mandatory penalties that also were imposed in the amount of $5,985. Judge Stanton was keenly aware of and carefully considered those circumstances, commenting:

> With respect to the ability to pay, it's clear[] that you have a lot of things you have to pay. But you will be earning something during – and I don't know what status and where [the victim] would fall in line with the prison system, whether or not Drug Enforcement gets their money first, or the Violent Crime Compensation Board, but I'm going to put [the victim] on the list as well for at – you know, in the nominal amount.

We decline to substitute our judgment for that of the sentencing judge in determining defendant's ability to compensate the attempted-murder victim incrementally over the course of his term of imprisonment. We see no abuse of discretion in setting the amount of restitution "so as to provide the victim with

24

the fullest compensation for loss that is consistent with the defendant's ability to pay." N.J.S.A. 2C:44-2(c)(2).

To the extent we have not addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1900-18